**SIMITAR ENTERTAINMENT, INC., a Minnesota Corporation, and Silva–Simitar Entertainment, LLC, a Minnesota limited liability company, Plaintiffs,**

v.

**SILVA ENTERTAINMENT, INC., a Texas corporation, and Luis Silva, a Texas resident, Defendants.**

**No. Civ. 98–1628 (JRT/RLE).**

United States District Court, D. Minnesota.

March 10, 1999.

Michael Alan Nekich, Jeffrey E. Grell, Minneapolis, MN, for Plaintiffs.

Silva Entertainment, Inc., Universal City, TX, pro se.

Luis Silva, Universal City, TX, pro se.

## ORDER

TUNHEIM, District Judge.

Based upon the Report and Recommendation of United States Magistrate Judge Raymond L. Erickson, and after an independent review of the files, records and proceedings in the above-titled matter, it is—

ORDERED:

1. That the Defendants' Motion to Dismiss, or in the alternative to Compel Arbitration and Stay Litigation [Docket No. 2] is granted in part, and denied in part.

2. That the Plaintiffs' claims against Defendant Luis Silva for breach of contract, which are contained in Count V of their Complaint, is referred to arbitration as set forth in the arbitration provisions which are contained in the Member Con-

trol Agreement, and the Employment Agreement.

3. That the portion of this action, which encompasses the Plaintiffs' claims against Luis Silva for breach of contract, is stayed until such time as an arbitration award has been rendered on said claims.

## ORDER and REPORT AND RECOMMENDATION

### I. *Introduction*

ERICKSON, United States Magistrate Judge.

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A) and (B), upon the Defendants' Motion to Dismiss, or in the alternative, to Stay Litigation and Compel Arbitration.

A Hearing on the Motions was conducted on September 28, 1998, at which time the Plaintiffs appeared by Jeffrey E. Grell, Esq., and the Defendants appeared by Christopher M. Daniels, Esq. ("Daniels").[1]

For reasons which follow, we recommend that the Motion be granted, in part, that Silva–Simitar Entertainment, LLC's ("Silva–Simitar's") and Simitar Entertainment, Inc.'s ("Simitar Entertainment's") claims against Defendant Luis Silva ("Silva"), for breach of contract, be referred to arbitration, pursuant to the agreement of those parties to arbitrate such disputes, and that those claims be stayed pending the outcome of the arbitration. We recommend that the Motion be denied in all other respects, and that all of the Plaintiffs' claims against Defendant Silva Entertainment, Inc. ("Silva Entertainment"), and that the remainder of their claims against Silva personally, be allowed to proceed.

### II. *Factual and Procedural Background*

This case arises from a joint business venture between the parties to exploit the Conjunto, Tejano, and popular Mexican

1. For reasons delineated in the text of this Order and Report and Recommendation,

Christopher M. Daniels, Esq., did not effectively appear on behalf of either Defendant.

music markets. Simitar had been attempting to enter these markets since late 1996. Silva, who serves as Silva Entertainment's director, officer, and majority shareholder, together with another representative of Silva Entertainment, contacted Simitar in order to discuss a combined effort to best take advantage of the Conjunto, Tejano, and popular Mexican music market. According to the Complaint, Silva, or his agents, furnished Simitar with information that was intended to induce Simitar to associate with Silva Entertainment. Among various representations, that were made in the course of negotiating the new enterprise, Silva is said to have advised that he held the copyrights for several music recordings; had previous financial success in the music industry; would provide the new joint venture with six popular recording artists; and would provide certain capital contributions to the new business. The Plaintiffs contend that these representations were fraudulent.

Having been convinced that a partnership with Silva Entertainment would be advantageous, Simitar Entertainment entered a Member Control Agreement with Silva Entertainment, which formed Silva–Simitar, a new limited liability company under Minnesota law. Among its various provisions, which governed the management of the company, the Member Control Agreement provided, in pertinent part, for the arbitration of certain disputes between Silva Entertainment and its constituent members, as follows:

> *Arbitration:* If any controversy or claim arising out of this Agreement cannot be settled by the parties hereto and, if applicable, the Company (the "disputants"), the controversy or claim shall be submitted to arbitration ***. Notwithstanding the foregoing, no disputant shall be required to seek arbitration regarding any cause of action that would entitle such disputant to injunctive relief.
>
> Each of the disputants shall be entitled to present evidence and argument to the arbitrator. The arbitrator shall have the right only to interpret and apply the provisions of this Agreement (including other applicable agreements) and may not change any of such provisions.

*Member Control Agreement* ¶ 16.14, *Affidavit of Jeffrey E. Grell, Ex.* A.

On the same day, on which the Member Control Agreement was effected, Silva entered an Employment Agreement with the newly formed limited liability company, which governed Silva's employment relationship with Silva–Simitar. The Employment Agreement also contains an arbitration provision, the terms of which vary from the arbitration clause contained in the Member Control Agreement. As relevant to the Motions before us, the arbitration clause, which is contained in the Employment Agreement, provides as follow:

> (a) [Silva and Silva–Simitar] agree that any controversy, dispute or claim of any nature between [Silva and Silva–Simitar] *** which may arise under this Agreement, shall be determined by arbitration. Any arbitration under this arbitration Agreement shall *** offer the same degree of relief available to the parties through the courts.
>
> (b) This arbitration Agreement shall apply to any controversy, dispute or claim arising from events which occurred prior, on or subsequent to the execution of this arbitration Agreement. This arbitration Agreement shall be interpreted according to the laws of the State of Minnesota.

*Employment Agreement* ¶ 11, *Grell Aff., Ex.* B.

Thus, Silva Entertainment, Simitar Entertainment, and Silva–Simitar, are all bound by the arbitration clause of the Member Control Agreement, while Silva–Simitar, and Silva, are parties to the somewhat different arbitration provisions that are set forth in the Employment Agreement.

Alleging that Silva and Silva Entertainment fraudulently induced, and then unlawfully exploited, the contractual relation-

ship that was formed between the parties, Silva–Simitar and Simitar Entertainment commenced an action against Silva, and Silva Entertainment, in Minnesota State Court, seeking over $1,000,000.00 in compensatory damages, under 18 Counts, including common law fraud, constructive fraud, negligent misrepresentation, negligence, breach of fiduciary duty, and conversion. See, *State Court Complaint, Grell Aff., Ex. F.* Before an Answer was filed, the Plaintiffs voluntarily dismissed their State Court action, and filed their cause in Federal Court.

In this action, the Plaintiffs charge that Silva and Silva Entertainment are each liable under ten statutory and common law causes of action: 1) two Counts of liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *Title 18 U.S.C. §§ 1961–1968,* for engaging in a conspiratorial scheme to commit mail and wire fraud; 2) a violation of the Minnesota Deceptive Trade Practices Act, *Minnesota Statutes Section 325D.44;* 3) common law fraud or misrepresentation; 4) a breach of contract; 5) tortious interference with contractual relationship; 6) a breach of fiduciary duty; 7) a theory *respondeat superior* to impute liability for Silva's conduct to Silva Entertainment; 8) unjust enrichment; and 9) conversion. On August 5, 1998, Silva filed, on his and Silva Entertainment's behalf, an ostensible *pro se* Motion to Dismiss or, in the alternative, to Stay Litigation and Compel Arbitration. The Plaintiffs oppose the Motion.

### III. *Discussion*

A. *Parties and Issues Properly Before the Court.*

■ Before we examine the merits of the Defendants' Motion, we first address the Plaintiffs' argument that Silva cannot personally appear on behalf of Silva Entertainment, and that, therefore, no Motion, or other responsive pleading, has effectively been filed on behalf of Silva Entertainment, which is a corporation. It is settled that "the law does not allow a corporation to proceed *pro se.*" *Ackra Direct Marketing Corp. v. Fingerhut Corp.,* 86 F.3d 852, 857 (8th Cir.1996) (explaining that corporation was technically in default from the date that its counsel was permitted to withdraw without substitution), citing *Title 28 U.S.C. § 1654, United States v. Van Stelton,* 988 F.2d 70, 70 (8th Cir.1993), and *Eagle Associates v. Bank of Montreal,* 926 F.2d 1305, 1308 (2nd Cir.1991). It is no less established that a layperson may not represent a corporation in judicial proceedings, as a corporation may appear only by counsel. See, *Mendenhall v. Goldsmith,* 59 F.3d 685, 687 n. 1 (7th Cir.1995) (dismissing appeal filed by layperson on behalf of corporation); *In re America West Airlines,* 40 F.3d 1058, 1059 (9th Cir.1994) ("Corporations and other unincorporated associations must appear in Court through an attorney."). Even sole shareholders of corporations are prohibited from representing such corporations *pro se. Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2nd Cir.1990); *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381, 1385 (11th Cir.1985); *In re K.M.A., Inc.,* 652 F.2d 398, 399 (5th Cir.1981); *Capital Group, Inc. v. Gaston & Snow,* 768 F.Supp. 264, 265 (E.D.Wis.1991).

■ Regardless of his status, as an owner, director, or officer of Silva Entertainment, Silva's *pro se* Motion is inoperative with respect to Silva Entertainment, which has yet to effectively respond to the Plaintiffs' Complaint. As we have noted, however, an attorney—Daniels—purported to appear on behalf of both Defendants, at the Hearing on the Motions. At the commencement of the Hearing, Daniels made the following statement:

> I'm representing Mr. Silva today and the corporation. I hope that takes care of the issue.

*Hearing Transcript ("Tran.")* at 4, [Docket No. 10].

The Plaintiffs' attorney responded that he had no objection to Daniels' representation of Silva Entertainment, "so long as we received a notice of appearance or some

other formal pleading that would signify to us that he is, in fact, representing Silva Entertainment." *Tran.* at 10–11. To date, Daniels has not filed a Notice of Appearance, nor has he filed a signed pleading, which advises that Silva Entertainment does, in fact, join in Silva's Motion. Thus, we are faced with the question of whether Daniels' oral appearance is sufficient to enervate, with respect to the interests of Silva Entertainment, what would otherwise be a lifeless *pro se* Motion for the benefit of a corporation.

 Daniels' oral representation is insufficient to bring Silva Entertainment's position before the Court. Rule 11, Federal Rules of Civil Procedure, requires that every Motion which is filed in a Federal District Court, be signed by the party, or an attorney of record. "Rule 11 imposes a duty on attorneys to certify [by their signature] that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."

**2.** Silva Entertainment, Inc. ("Silva Entertainment"), having never responded to the Plaintiff's Complaint, has technically been in default since late July of 1998. See, *Rule 12(a)(1), Federal Rules of Civil Procedure.* Silva Entertainment is directed to serve and file an Answer, or other responsive pleading, or advise the Court of good cause why it cannot, **within 20 days of the date of this Order and Report and Recommendation.** If the corporation fails abide by this directive, the Court will be compelled to recommend the entry of a default against it. See, *Hall v. T.J. Cinnamon's, Inc.,* 121 F.3d 434 (8th Cir.1997).

**3.** The Plaintiffs also argue that the Defendants have waived their right to arbitration by failing to demand arbitration and, instead, by threatening litigation in a judicial forum. According to the law of this Circuit, a party waives its right to demand arbitration when: 1) it has knowledge of an existing right to arbitration; 2) it undertakes conduct inconsistent with that right; and 3) the party opposing arbitration suffers prejudice. *Hunt v. Up North Plastics, Inc.,* 980 F.Supp. 1046, 1048 (D.Minn.1997), citing *Ritzel Communications, Inc. v. Mid–American Cellular Telephone Co.,* 989 F.2d 966, 969 (8th Cir.1993). Prejudice, which is sufficient to support a

*Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). According to the Supreme Court, "the central purpose of Rule 11 is to deter baseless filings in district court." *Id.* To effectuate that purpose, the Rule also provides that "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party." Since the Motion, which purportedly was filed on behalf of Silva Entertainment, has never been executed by a legal representative of that corporation—even after that irregularity was called to Daniels' attention—Silva Entertainment's Motion is not properly before us.[2] See, *Thompson v. Thomas,* 680 F.Supp. 1, 3 (D.D.C.1987) (the Court "cannot act upon pleadings signed by the individual plaintiffs on the corporation's behalf."). As Silva, the individual Defendant, is the only party that has presented the Motions to Dismiss, or to Stay and Arbitrate, we are legally constrained only to address whether the Plaintiffs' claims, against Silva, are subject to arbitration.[3]

finding of waiver, may result from lost evidence, duplication of efforts, use of discovery methods that are unavailable in arbitration, or litigation of substantial issues going to the merits. *Stifel, Nicolaus & Co., Inc. v. Freeman,* 924 F.2d 157, 159 (8th Cir.1991). While delay in seeking to compel arbitration does not, itself, constitute prejudice, a party's failure to assert a prelitigation demand for arbitration may contribute to a finding of prejudice because the other party has no notice of an intent to arbitrate. *Id.* However, waiver of arbitration is disfavored in law, and the party seeking to prove waiver carries a heavy burden to dislodge the presumption against waiver. See, *Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai,* 141 F.3d 234, 238 (5th Cir.1998); *Schwan's Sales Enterprises, Inc. v. Sabatasso,* Civ. No. 4–87–126, 1988 WL 119171 *3 (D.Minn., Nov. 8, 1988).

Here, the Plaintiffs have shown that the Defendants conducted themselves in a manner that is inconsistent with a known right to arbitration but, given the fact that this Motion was filed in lieu of an Answer and, that the case is in its infancy, there is no demonstrable prejudice to support a finding that the Defendants have waived their right to arbitration.

B. *Application of the Federal Arbitration Act.*

1. *Standard of Review.*

■ Congress enacted the Federal Arbitration Act, *Title 9 U.S.C. § 1, et seq.*, "to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts." *Keymer v. Management Recruiters Int'l, Inc.*, 161 F.3d 1154, 1156 (8th Cir.1998),[4] citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); see also, *Allied–Bruce Terminix Co. v. Dobson*, 513 U.S. 265, 270–72, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). As our Court of Appeals has observed, the FAA comprises a—"statutory scheme for effectuating the federal policy of encouraging arbitration as a less costly and less complicated alternative to litigation." *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984). Section 2 of the FAA provides that a written arbitration agreement, in "a contract evidencing a transaction involving commerce *** shall be valid, irrevocable, and enforceable ***." *Title 9 U.S.C. § 2*. Section 3 directs Federal District Courts, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," to stay Court proceedings until the issue in dispute is resolved by arbitration. *Title 9 U.S.C. § 3*. In addition, the FAA enables a litigant to obtain an Order "compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement ***." *Title 9 U.S.C. § 4*. These provisions manifest a strong Federal policy in favor of enforcing arbitration agreements. *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

■ Since there is no dispute, that Silva's agreement with Silva–Simitar falls within the scope of the FAA, our analysis proceeds with a two-part inquiry. See, *Alamria v. Telcor Int'l, Inc.*, 920 F.Supp. 658, 662 (D.Md.1996). First, we must decide whether a valid agreement to arbitrate exists between the parties, *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir.1994), and then decide whether the specific dispute, or disputes, fall within the scope of that agreement. *Id.* In engaging in the inquiry, the Court applies "ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter." *Keymer v. Management Recruiters Int'l, Inc.*, supra at 1156. Lastly, if claims are arbitrable under the FAA, the claims must be referred to arbitration, and the judicial proceedings must be stayed pending that arbitration. *Id.*

2. *Legal Analysis.*

a. *Valid Agreement to Arbitrate.*

In deciding whether the Plaintiffs, and Silva, had agreed to submit their disputes, which are specified in the Plaintiff's Complaint, to arbitration, we must be satisfied that a valid agreement to arbitrate exists between the parties. *Id.* at 1156–57; *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834 (8th Cir.1997). There is no question, and the parties do not disagree, that the Employment Agreement sets forth a valid agreement to arbitrate disputes "of

---

Furthermore, as the bulk of their claims are not arbitrable, the Plaintiffs cannot contend that any efforts, which they have undertaken with respect to this litigation, will have been wasted. See, *Hunt v. Up North, Inc.*, supra at 1048 (rejecting waiver argument, in part, because of the existence of significant claims which were not subject to arbitration). Accordingly, the Defendants have not waived their right to seek arbitration of their dispute with the Plaintiffs.

4. We note that the *Keymer* decision, from which we quote, has been vacated, and superseded, by an opinion which has yet to be published, and which is not accessible on Westlaw. See, *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501 (8th Cir. 1999) (No. 98–1635). However, the excerpt we quote, in the text of this Report, is also contained in the substituted decision of the Court of Appeals.

any nature," between Silva and Silva–Simitar, that may "arise under" the Employment Agreement. Simitar Entertainment is also a party to an agreement, of undisputed validity, with Silva–Simitar and Simitar Entertainment, which is contained in the Member Control Agreement, to arbitrate any dispute "arising under" that Agreement.[5] We find that the two arbitration clauses unambiguously constitute valid agreements to arbitrate disputes "arising under" the quadrilateral contractual relationship between Silva, Silva Entertainment, Simitar Entertainment, and Silva–Simitar, that was formed on September 25, 1997.

b. *Arbitrability of the Plaintiffs' Claims.*

 We look to principles of Minnesota contract law in order to determine whether the parties agreed to submit their present claims to arbitration. Maintaining, at the forefront of the analysis, "a healthy regard for the Federal policy favoring arbitration," we adhere to the Supreme Court's instruction that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, supra at 24–25, 103 S.Ct. 927. At the same time, "the FAA's pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion." *Keymer v. Management Recruiters, Inc.*, supra at 1157, citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Although the parties' intent is far from peripheral to the analysis, "the court must operate under a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Daisy Mfg. Co. v. NCR Corp.*, supra at 395, quoting *Paine-Webber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3rd Cir.1990) [internal quotation omitted].

i. *Conflicts between the Arbitration Clauses.*

 The issues that are presented, by Silva's attempt to simultaneously enforce two arbitration clauses, are somewhat perplexing. The terms employed by the two provisions reflect substantial differences in the scope of disputes that are properly arbitrable. The agreement to arbitrate, which is set forth in the Employment Agreement, uses broad language, and is

---

5. Although the issue was not raised by the parties, it is not entirely clear that Luis Silva ("Silva") would have standing to enforce the Member Control Agreement's arbitration provision, as he was not a signatory to that Agreement. This issue arises only because Silva Entertainment has ineffectively responded to the Complaint, and has not filed a Motion to enforce that arbitration agreement. The general rule is that one, who is not a party to a contract, has no standing to compel arbitration. *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir.1993). A pertinent exception to this rule holds that "a signatory [is] bound to arbitrate with a nonsignatory at the nonsignatory's insistence because of 'the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract *** and [the fact that] the claims were 'intimately founded in and intertwined with the underlying con- tract obligations.'" *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2nd Cir.1995) [ellipses and second alteration in original], quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir.1993), *cert. denied*, 513 U.S. 869, 115 S.Ct. 190, 130 L.Ed.2d 123 (1994); see also, *Boyd v. Homes of Legend, Inc.*, 981 F.Supp. 1423, 1433 (M.D.Ala.1997) (nonsignatory may enforce arbitration clause against signatory, under a theory of equitable estoppel, where the signatory makes allegation of "both the nonsignatory and one or more of the signatories to the contract"). Silva is entitled, we believe, to enforce the Member Control Agreement's arbitration provision because of his close relationship with Silva Entertainment, which is a signatory to that Agreement, and because the Complaint alleges that the Defendants' misconduct is not only intertwined, but it imputes the actions of Silva to the corporation he controls.

applicable to "any controversy, dispute or claim of any nature" that "may arise under" the Agreement, regardless of whether the dispute arose before, during, or after, the execution of the Agreement, and it empowers the arbitrator to "offer the same degree of relief available to the parties through the courts." *Employment Agreement* ¶ 9. On the other hand, the Member Control Agreement's arbitration clause provides a similarly broad scope in governing disputes "arising out of" the Agreement, but limits the applicability of the clause by stating that the disputants are not required to seek arbitration for claims involving injunctive relief and, further, by declaring that the arbitrator is only empowered to interpret and apply the provisions of the Agreement. *Member Control Agreement* ¶ 16.14.

■ The parties' briefs each seize, respectively, upon the expansive, or the limiting language in the arbitration agreements, so as to support their personally tailored interpretations of the breadth, or attenuation, of the scope of arbitrability, without discussing the interplay between the two agreements to arbitrate, which were executed on the same day, and in the same business transaction. Minnesota law holds that, in general, "[c]ontracts in several writings relating to the same transaction will be construed with reference to each other." *Anderson v. Kammeier*, 262 N.W.2d 366, 371 (Minn.1977). "Whether separate documents executed simultaneously should be treated as a single contract is governed by the intent of the parties manifested at the time of contracting and viewed in light of the surrounding circumstances." *Farrell v. Johnson*, 442 N.W.2d 805, 807 (Minn.App.1989). Here, the two contracts are not only linked by temporal and transactional proximity, but the parties' intent, that the two agreements be construed in concert, but with the Employment Agreement being subordinate to the Member Control Agreement, is expressly stated in the Employment Agreement, in the following terms:

*Member Control Agreement* This agreement has been entered into in conjunction with the Member Control Agreement, entered into between Simitar Entertainment, Inc. and Silva Entertainment, Inc. \*\*\*. **In the event that any of the terms and provisions of this Agreement conflict with or contravene the terms or provisions of the Member Control Agreement, the terms and provisions of the Member Control Agreement shall be deemed to be controlling.**

*Employment Agreement* ¶ 12(d) [emphasis added].

The disputes at issue implicate both arbitration agreements, as they have arisen under both contracts, and they create a conflict between the operation of both. Therefore, paragraph 12(d) requires that the Employment Agreement's arbitration provision to yield to the limitations set forth in its counterpart, as set forth in the Member Control Agreement. Accordingly, we construe both arbitration clauses jointly, and we apply all of the restrictions, on the parties' agreement to arbitrate, that are set forth in Section 16.14 of the Member Control Agreement.

ii. *Significance of the Use of "Arising out of" and "Arising under" as Opposed to "Relating to" upon the Scope of Arbitrability.*

■ The Plaintiffs contend that the employment of the clauses, which require the submission, to arbitration, of disputes "arising out of," or "which may arise under," the Member Control and Employment Agreements, means that only the contract claims are arbitrable, and that their other common law, and statutory claims, are beyond the purview of the arbitration because those did not, strictly speaking, "arise out of," or "under," the contracts themselves. In this respect, they underscore that the Supreme Court, and Eighth Circuit cases, which uphold a broad, extra-contractual application of agreements to arbitrate, have arisen from

provisions that were applicable to disputes "arising out of **or relating to**" the underlying contract. See, *Shearson/American Express v. McMahon*, 482 U.S. 220, 223, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (holding that claims against a broker, under the securities laws and RICO, were subject to arbitration, pursuant to a provision requiring the arbitration of any dispute "relating to the [customers'] accounts"); *Prima Paint v. Flood & Conklin Mfg.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (claim of fraud, which related to the inducement of an agreement, was covered by an "arising out of or relating to this agreement" arbitration clause); *Daisy Mfg. Co. v. NCR Corp.*, supra at 392 (RICO and fraud claims were subject to arbitration under "broad arbitration clause that covered 'any controversy or claim' related to any contract" between parties); *Surman v. Merrill Lynch, Pierce, Fenner & Smith*, 733 F.2d 59, 60 n. 1 (8th Cir.1984). Significantly, while the Supreme Court, and Eighth Circuit, have described these clauses as "broad," none of these decisions suggested that, under the FAA, the phrase "relating to," conveys a breadth of applicability not contemplated by "arising out of" or "arising under."

Several Courts in other jurisdictions, however, have attached a significance to the absence of the term "relating to," as revealing the parties' intent to narrow the scope of the disputes that were covered by an arbitration clause. The reasoning of these Courts is characterized by a view that the absence of "relating to" is a product of an intentional omission of the term, and reflects the parties' intent that the arbitration agreement have a narrow application.

For example, the Ninth Circuit holds, that "an arbitration clause that cover[s] disputes 'arising under' [or 'arising out of'] an agreement, but omit[s] reference to claims 'relating to' an agreement, cover[s] only those disputes 'relating to the interpretation and performance of the contract itself.' " *Tracer Research Corp. v. National*

*Environmental Services Co.*, 42 F.3d 1292, 1295 (9th Cir.1994), citing *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir.1983). Similarly, the Second Circuit, in *In re Kinoshita*, 287 F.2d 951 (2nd Cir.1961), dealt with an arbitration clause that required arbitration "if any dispute or difference should arise under this agreement." The Court acknowledged that "views more favorable to arbitration appear to be making headway," *id.* at 953, and yet held the clause inapplicable to a claim for fraud in the inducement, because the clause did not include the additional phrase "or relating to this contract." See also, *Carro v. Parade of Toys, Inc.*, 950 F.Supp. 449, 452 (D.P.R.1996); *Mutual Benefit Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 872 (D.N.J.1992); but see, *S.A. Mineracao da Trindade-Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 193 (2nd Cir.1984) (noting *In re Kinoshita*'s "inconsistency with federal policy favoring arbitration," but declining to overrule it because contracting parties may have relied on decision in formulating arbitration provisions).

Other Circuits, specifically the Eleventh and Seventh, have rejected this approach, and have held that the terms "arising out of," "arising under," and "arising hereunder," are sufficiently broad so as to encompass all claims that are germane to the subject matter of the contract, and not merely those that sound in contract. See, *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 385–86 (11th Cir.1996) (claims of fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good faith and fair dealing, and outrage, covered by agreement to arbitrate applicable to "any dispute *** which may arise hereunder"); *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 642 (7th Cir.1993) ("we do not believe that adding 'relating to' to 'arising out of' substantially broadens the scope of the clause"). These decisions are premised, in large measure, upon the Supreme Court's instruction that "any doubt concerning the

scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* supra at 24–25, 103 S.Ct. 927.

For that same reason, we believe that an interpretation of "arising under," or "arising out of," should be as broad as that applied to "arising out of or relating to," and we respectfully reject the holdings of *Tracer Research Corp.,* and of *In re Kinoshita,* are lending little deference to the presumption of arbitrability, which has been mandated by the Supreme Court. At most, the omission of "relating to," from these arbitration clauses, creates an ambiguity as to the scope of the arbitrability, which must be resolved, absent some other showing, in favor of arbitration. See, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). There would be, in our view, little of substance, which would be supplied, by the addition of "relating to" in the arbitration clauses at issue here, see, *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.,* supra at 642, and we decline to hold that such an omission is "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT & T Techs., Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) [quotations omitted].

iii. *Effect of Express Limitations on Arbitrator's Authority to Decide Claims.*

The express limitation upon the arbitrator's authority, which restricts the arbitrator to the mere interpretation and application of the contractual provisions, and the express exclusion of claims for injunctive relief, leaves no room to doubt that the parties intended to limit the scope of arbitration to contractual claims that did not involve requests for injunctive relief. In a practical sense, an arbitration agree-ment operates as no more than a specialized choice-of-forum provision, which has the effect of identifying the "situs of the suit," as well as the procedures that govern its resolution. See, *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 630, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), citing *Scherk v. Alberto–Culver Co.,* 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). While statutory rights are arbitrable, " '[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.' " *Gilmer v. Interstate/Johnson Lane Corp.,* supra at 26, 111 S.Ct. 1647, quoting *id.* at 628, 105 S.Ct. 3346.

We cannot, therefore, construe the language of the arbitration agreements to mean that the Plaintiffs agreed to submit all of their contractual and statutory claims to an arbitrator, but that their avenues of relief would be limited to damages for a breach of contract. Such an interpretation would suggest that the parties agreed to submit, to arbitration, matters that the arbitrator could not decide, which would amount to a *de facto* waiver of the substantive rights that are afforded by State and Federal law. Given the beneficial, public purposes, that are served by arbitration, such an interpretation would be untenable.

In a closely paralleling case, the Eleventh Circuit examined an arbitration agreement whose scope was defined in two somewhat inconsistent clauses. See, *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998). As here, the first clause stated, generally, that the contracting parties consented to the arbitration of "any controversy or claim arising out of or relating to" the underlying employment agreement. *Id.* at 1057. The second clause stated, however, that the arbitrator would be "authorized to award damages for breach of contract only, and shall have no authority whatso-

ever to make an award of other damages." *Id.* The issue confronting the Court was whether to construe the second clause as limiting the types of claims that the parties had intended to arbitrate, or as merely limiting the remedies that would be available for any claims submitted to arbitration. The Court opted for the first interpretation, and thereby avoided the abrogation of public policy, and unconscionability arguments, that would have been implicated by a waiver of statutory rights. *Id.* at 1058–59.

A more straightforward approach, in interpreting an identical arbitration provision, was employed by the District of New Mexico, in *Alcaraz v. Avnet, Inc.*, 933 F.Supp. 1025, 1027 (D.N.M.1996), where the Court held that the parties' simply had not agreed to submit noncontractual claims to arbitration. We believe that the reasoning, in *Alcaraz,* is persuasive, and that it informs our interpretation of the arbitration provisions that are at issue in this case. There, the Court explained:

> As noted by the *Mitsubishi* court, "[n]othing \*\*\* prevents a party from excluding statutory claims from the scope of an agreement to arbitrate." *Mitsubishi [Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, supra at 628, 105 S.Ct. 3346]. By including the above language in the Agreement, Avnet has done just that. If by the terms of the Agreement, the arbitrator has no authority to award any damages under Title VII or the ADEA, then the parties did not intend to submit Title VII or ADEA claims to arbitration. An employee can only be required to arbitrate claims if s/he has contracted to do so. *Armijo [v. Prudential Ins. Co.*, 72 F.3d 793, 797 (10th Cir.1995) ] (citing *Gilmer v. Interstate/Johnson Lane Corp.*, supra at 35, 111 S.Ct. 1647).

*Id.* at 1027–28.

Applying this reasoning here, we conclude that the parties have agreed to arbitrate only those matters which fall within the circumscribed jurisdiction of the arbitra-

tor—namely the interpretation and application of the Member Control Agreement, and the Employment Agreement, and which do not involve claims for injunctive relief.

Therefore, of the claims asserted against Silva, only Count V, which alleges a breach of contract, is subject to mandatory arbitration, while the remaining Counts, each of which requires an assessment of the Defendants' conduct under Federal and State law, are beyond the scope of the parties' arbitration provisions. As a consequence, we recommend that the Plaintiffs' breach of contract claims against Silva, which are presented in Count V of their Complaint, be referred to an arbitrator, pursuant to the arbitration provisions in the Member Control Agreement, and the Employment Agreement.

### c. *Stay of Proceedings.*

Once a Court has determined, that a dispute falls within the scope of an arbitration agreement, the proceedings in the case, on the issues referable to arbitration, must be stayed pending the completion of arbitration. See, *Title 9 U.S.C. § 3; Keymer v. Management Recruiters Int'l, Inc.*, supra at 1156; *Houlihan v. Offerman & Co.*, 31 F.3d 692, 695 (8th Cir.1994); *Morgan v. Smith Barney, Harris Upham & Co.*, supra at 1165. The decision to stay the remaining nonarbitrable claims, pending the outcome of arbitration, is soundly vested in the District Court's discretionary authority to control its docket. See, *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, supra at 21 n. 23, 103 S.Ct. 927; *Summer Rain v. Donning Company/Publishers, Inc.*, 964 F.2d 1455, 1461 (4th Cir.1992). Expanding the stay, so as to encompass all of the nonarbitrable claims in the case, is appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's decision. See, *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2nd Cir.1987); *Allied Fire & Safety*

*Equip. Co. v. Dick Enter., Inc.,* 886 F.Supp. 491, 498 (E.D.Pa.1995).

 We cannot discount the effect, upon the nonarbitrable claims, that an arbitrator's interpretation of the Member Control Agreement, and of the Employment Agreement, may have, for it may well influence the issues that remain for resolution. Nevertheless, much of this lawsuit is premised upon an asserted fraud in the making of the contracts, themselves, and, therefore, it cannot be fairly said that the breach of contract claims against Silva predominate over that claims that involve a fraudulent conspiracy under RICO, deceptive trade practices, fraud, tortious interference with contractual relationships, breach of fiduciary duties, unjust enrichment, and conversion. Accordingly, we recommend that only the Plaintiffs' claims against Silva, in Count V, should be stayed pending arbitration.

NOW, THEREFORE, It is—

ORDERED:

That the Defendant Silva Entertainment shall serve and file an Answer, or other responsive pleading, or advise the Court of good cause why it cannot, **within 20 days of the date of this Order and Report and Recommendation,** or the Court will recommend the entry of default against it.

RECOMMENDED:

1. That the Defendants' Motion to Dismiss, or in the alternative to Compel Arbitration and Stay Litigation [Docket No. 2] be granted in part, and denied in part.

2. That the Plaintiffs' claims against Defendant Luis Silva for breach of contract, which are contained in Count V of their Complaint, be referred to arbitration as set forth in the arbitration provisions which are contained in the Member Control Agreement, and the Employment Agreement.

3. That the portion of this action, which encompasses the Plaintiffs' claims against Luis Silva for breach of contract, be stayed until such time as an arbitration award has been rendered on said claims.

## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 5, 1999,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 5, 1999,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.

February 18, 1999.