**CODDINGTON ENTERPRISES, INC., et al., Plaintiffs,**

v.

**Dean WERRIES, et al., Defendants.**

No. 98–1100–CV–W–8–6.

United States District Court, W.D. Missouri, Western Division.

July 6, 1999.

R. Edward Murphy, R. Dan Boulware, William W. Bird, Watkins, Bouleware, Lucas, Miner, Murphy & Taylor, St. Joseph, MO, John D. Taurman, Scott L. Cole, Vinson & Elkins, LLP, Dallas, TX, for plaintiffs.

Michael W. Rhodes, Thomas S. Stewart, Albert P. Mauro, Jr., Lathrop & Gage, Kansas City, MO, George M. Bock, Richard F. Adams, Slagle, Bernard & Gorman, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Before the court are defendants' motion to compel arbitration and stay proceedings, defendants' motion to consolidate, and defendants' motion for summary judgment against plaintiff Frank's Food Mart, Inc.

### Factual Background

This case involves several independent retail grocers (the plaintiffs) and their dispute with their wholesale supplier, defendant Fleming Companies, Inc. Plaintiffs allege that Fleming systematically overcharged them for groceries and related products they purchased from Fleming over a period of approximately 15 years. The gravamen of the complaint is the allegation that Fleming had a contract with plaintiffs to sell products to them at Fleming's "cost" plus certain fees, as specified in the applicable "Sell Plan." Plaintiffs allege that Fleming charged them in excess of the amounts authorized by the Sell Plan. Each of the plaintiffs has a contract with Fleming, either a Supply Agreement or a Franchise Agreement, that provides for mandatory arbitration.

Twelve of the 14 plaintiffs have Supply Agreements with Fleming, which contain express, mandatory agreements to arbitrate. Each Supply Agreement includes a paragraph entitled "Disputes; Arbitration," which provides in pertinent part: "The parties hereto agree that all disputes between them relating to this Agreement are to be resolved by arbitration as provided herein."

Two plaintiffs have executed Piggly Wiggly Franchise Agreements with Fleming that include arbitration provisions. W.H. Koch Co., Inc. ("Koch") executed such an agreement on February 27, 1995, and October 2, 1995, covering two of its three stores, and Coddington Enterprises, Inc. ("Coddington") executed such an agreement on April 12, 1995, covering one of its two stores. Defendant Koch alleges that Fleming's president represented to its

president that the arbitration clauses in the Franchise Agreements pertained only to the Fleming's right of first refusal if Koch wanted to sell.

The plaintiffs in this case have all been involved in litigation against Fleming prior to the initiation of this suit. Plaintiff Frank's Food Mart, Inc. ("Frank's") sued Fleming in Oklahoma in 1996, asking the court to determine its renewal rights under a sublease it had with Fleming and claiming that Fleming breached its Supply Agreement and violated the Missouri Deceptive Trade Practices Act by imposing the Fleming Flexible Market Program ("FFMP"). The matter was resolved in arbitration, with the arbitrator finding that Fleming was entitled to impose the FFMP under its Supply Agreement with Frank's. Defendants claim that since the present lawsuit also alleges that Fleming breached its Supply Agreement, and includes as one of its allegations that Fleming unilaterally attempted to force the FFMP pricing scheme upon the retail grocers in order to better hide the actual cost of the products it supplied, it is now barred from raising the claims in the instant case.

Several of the plaintiffs in this case also brought an action against Fleming in this court before the Honorable Dean Whipple styled *Robandee United Super, Inc. v. Fleming Companies, Inc.*, Case No. 97–1677–CV–W–1. That case was an equity action asking for an accounting of an advertising account maintained by defendant Fleming for the benefit of several grocery stores, the plaintiffs in the *Robandee* case. That action was stayed by Judge Whipple pending arbitration of the matter.

Most recently, all of the plaintiffs in this case originally were plaintiffs in a nearly identical action in this court, *Don's United Super, Inc. v. Fleming Companies, Inc.*, 98–6042–CV–SJ–6. In that case, following a motion to compel arbitration, the plaintiffs here dismissed their cases and refiled the present action. Again, defendants move to compel arbitration.

## Motion to Compel Arbitration

Defendants first move the court to compel arbitration and stay proceedings as to any claims which are not arbitrable. The defendants claim that because the plaintiffs have each signed some agreement with Fleming containing an arbitration clause, and because the arbitration clauses are broad, all claims by those plaintiffs which are the subject of this lawsuit must be submitted immediately to arbitration. The plaintiffs allege that the arbitration clauses found in the Supply Agreements are illegal, that the arbitration clauses found in the Franchise Agreements are inapplicable to this litigation, and that all of the arbitration clauses were fraudulently induced.

### A. Illegality

First the court must examine whether the arbitration clauses contained in the agreements cover the instant dispute. Plaintiffs Coddington and Koch contend that the arbitration clauses in the Piggly Wiggly Franchise Agreements do not apply to any disputes with Fleming arising from Fleming's activity as their supplier. The clause in one Franchise Agreement states: "Except for a claim for any money due from you to us or for an injunction under subparagraph 18(b), all disputes between you and us,[1] and any claim we cannot settle, relating to this Agreement or the Store will be resolved by arbitration."

■ Although a court may not impose arbitration on a party who has not agreed to arbitration, federal policy favors arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Eighth Circuit sets out two inquiries a court must make to determine whether an arbitration clause applies: (1) whether the

---

1. The arbitration clauses of the other two Franchise Agreements at issue are substantially similar to this one, but read "all disputes between Fleming" instead of "all disputes between you and us."

clause is broad or narrow; and (2) if the clause is narrow, whether the dispute involves an agreement collateral to the agreement containing the arbitration clause. *Fleet Tire Service of North Little Rock v. Oliver Rubber Co.,* 118 F.3d 619, 621 (8th Cir.1997). The arbitration clauses in the Franchise Agreements are "broad" clauses ("any claim we cannot settle, relating to this Agreement or the Store"). Since the arbitration clause is broad, even collateral disputes that relate to the Franchise Agreements would be arbitrable. In fact, "[w]here a broad arbitration clause is in effect, even the question of whether the controversy relates to the agreement containing the clause is subject to arbitration." *Id.* Thus, the court need not decide whether the alleged representations of Fleming's president concerning the scope of the arbitration could affect the clause under the parol evidence rule. Any such determination would be for the arbitrator.[2] Accordingly, the disputes at issue would be subject to arbitration, at least initially, and defendants' motion to compel arbitration shall be granted with respect to plaintiffs Coddington and Koch.

■ The plaintiffs holding Supply Agreements with Fleming which contain arbitration clauses acknowledge that their disputes with Fleming are covered under the language of the arbitration clauses. They do dispute, however, that the portion of their claims arising before they entered the agreements containing the arbitration clauses are covered by the clauses. The court disagrees. The arbitration clauses in the Supply Agreements have already been determined to be "broad" arbitration clauses. *Robandee United Super, Inc. v. Fleming Companies, Inc.,* Case No. 97–1677–CV–W–1 Order of April 10, 1998.

Courts have held that broad arbitration clauses such as the one involved here may cover more than just disputes over matters set forth in the contract. *Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1028 (11th Cir.1982). In this case, especially since the Supply Agreements containing the arbitration clauses cover essentially the same subject matter as previous Supply Agreements, the plaintiffs' dealings with Fleming occurring prior to the addition of the broad arbitration clauses would be covered under the clauses.

■ Next, the plaintiffs bound by their Supply Agreements to arbitrate claim that the arbitration clauses in the agreements are illegal. The arbitration clauses in the Supply Agreements provide, "The arbitrators will not award punitive, consequential or indirect damages. Each party hereby waives the right to such damages, and agrees to receive only those actual damages directly resulting from the claim asserted." Since the arbitration clauses in the controlling agreements are broad, and the alleged RICO violations arise out of the same activities by the defendants as do the other claims, the plaintiffs' RICO claims would be covered by the arbitration agreements. The plaintiffs acknowledge that statutory rights, such as a plaintiff's right to recover treble damages under RICO, are generally subject to arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). In *Mitsubishi Motors,* the Supreme Court stated that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id.*

---

**2.** The plaintiffs' argument that the parol evidence rule precludes the court's consideration of the arbitration clause in the Franchise Agreements since Koch's and Coddington's Supply Agreements do not contain arbitration clauses is misplaced. The parol evidence rule only prohibits "evidence of prior or contemporaneous oral agreements which vary, add to, or contradict the terms of an unambiguous and complete contract." *C.L. Maddox, Inc. v. Benham Group, Inc.,* 88 F.3d 592, 599 (8th Cir.1996). The Franchise Agreements clearly are not "prior or contemporaneous oral agreements" so the parol evidence rule is inapplicable.

The plaintiffs bound to arbitrate by the Supply Agreements contend that it is the presence of the damages limitations in the arbitration clauses which makes them fail. In *Mitsubishi Motors*, the Court stressed that federal statutory treble-damages provisions, like the one in the RICO statute, were "in essence ... remedial provision[s]" and that they were important tools in a statutory enforcement scheme to deter potential violators. *Id.* at 635, 105 S.Ct. 3346. Accordingly, when the treble-damages provision of RICO is eliminated, both its remedial and deterrent functions are thwarted. The arbitration provision approved by the Court in *Mitsubishi Motors* did not preclude the recovery of treble damages for the injured party. Indeed, the court stated that "in the event the [contract] clauses operated ... as a prospective waiver of a party's right to pursue statutory remedies for ... violations, we would have little hesitation in condemning the agreement as against public policy." *Id.* at 637 n. 19, 105 S.Ct. 3346.

Faced with a similar situation, the Eleventh Circuit held an agreement to arbitrate a plaintiff's Title VII claim unenforceable. *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998). In *Paladino*, the majority[3] found that the broad arbitration clause at issue covered the plaintiff's Title VII claim. *Id.* at 1061. It then found that the contractual provision limiting the plaintiff's remedy to damages for breach of contract "denie[d] the employee the possibility of meaningful relief in an arbitration proceeding" because it would prevent the arbitrator from granting Title VII damages and equitable relief, thereby defeating the remedial purposes of Title VII. *Id.* at 1062. Accordingly, the court refused to compel the plaintiff to arbitrate her Title VII claim. The same analysis would hold true in the RICO context, and as stated previously, the damage limitations defeat RICO's purposes.

The next issue is how the court is to treat the agreements so that they are consistent with RICO's purposes. This will, in part, be determined by the severability of the provisions in the arbitration clauses which attempt to limit relief. In general, a provision is not severable from the remainder of the contract when it is an integrated part of the contract. *Graham Oil Co. v. ARCO Products Co.,* 43 F.3d 1244, 1248 (9th Cir.1994). Therefore, "[w]here one term of an arbitration agreement has failed, the decision between [omitting] the failed provision and refusing to enforce the agreement altogether turns on the intent of the parties 'at the time the agreement was executed, as determined from the language of the contract and the surrounding circumstances.'" *Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 742 F.Supp. 1359, 1364 (N.D.Ill.1990), quoting *National Iranian Oil Co. v. Ashland Oil,* 817 F.2d 326, 333 (5th Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987). "To determine this intent, courts look to the 'essence' of the arbitration agreement; to the extent the court can infer that the essential term of the provision is the agreement to arbitrate, that agreement will be enforced despite the failure of one of the terms of the bargain." *Zechman,* 742 F.Supp. at 1364.

In this case, the plaintiffs contend that, although the arbitration clauses are severable from the rest of the Supply Agreements, the damage limitations contained therein are not severable from the remainder of the arbitration clauses. They claim that the damage limitations "taint" the entire clauses and are integral to the entire arbitration agreements. Plaintiffs claim that the only way to remedy the situation

3. This opinion, although not set out as the opinion of the court, was joined by two of the three judges on the panel, thus representing the majority opinion. The opinion of the court in this case, which actually was held by only one panel member, interpreted the limitation of damages to mean that the arbitration clause at issue did not cover the plaintiff's Title VII claims.

is to hold the entire arbitration clauses unenforceable.

The chief case upon which plaintiffs rely for this proposition is *Paladino*, 134 F.3d 1054. Notably, it is Chief Judge Hatchett's opinion to which plaintiffs cite for their argument that the entire arbitration clause is unenforceable. Contrary to plaintiffs' assertions, Judge Hatchett's interpretation made the arbitration provision unenforceable only to the plaintiff's federal statutory claims. According to this opinion, the common law claims were still arbitrable; the defendants had simply abandoned this argument on appeal. *Paladino*, 134 F.3d at 1059 n. 3 and accompanying text. The majority opinion in *Paladino* held the entire arbitration clause unenforceable, but not based solely on the limitation on damages. The majority also noted that the arbitration clause impermissibly shifted the costs of resolution, forcing the plaintiff employee to pay at least half of the $2000 filing fee to initiate arbitration. *Id.* at 1062. Unlike the presumption of hardship for individual employees in *Paladino*, the plaintiffs here were independent businesses, presumably capable of agreeing to and paying such a division of fees. Cost will not be deemed a hardship, particularly when one of the asserted advantages of arbitration is that it is more cost-effective than litigation. To that extent *Paladino* is distinguishable.

Other cases plaintiffs cite involve arbitration agreements which contained multiple provisions which the courts found violative of public policy. For example, in *Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244 (9th Cir.1994), the arbitration agreement at issue prospectively waived statutorily-provided protections including exemplary damages, reasonable attorney fees and a statute of limitations. The court found that the purpose of the arbitration provision at issue was "to achieve

through arbitration what Congress ha[d] expressly forbidden." *Id.* at 1249. In *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (Cal.Ct.App. 1997), the defendant was deprived of no remedies, whereas its employees were denied exemplary damages; equitable relief available under statutes; and attorney fees, expenses and costs. Further, the employees lost their salary and benefits during litigation without penalty to the defendant, and the employees were bound to a one-year statute of limitations. *Id.* at 1528–29, 60 Cal.Rptr.2d 138. The court in *Stirlen* found the entire arbitration agreement to be so one-sided as to be unconscionable under state law. *Id.* at 1542, 60 Cal.Rptr.2d 138. The only offending provisions in the arbitration clauses in the Supply Agreements are the two quoted sentences limiting damages, and they impinge on federal statutory rights only as to the RICO claims.[4]

The Eighth Circuit, in ruling that Title VII claims could be sent to arbitration, has noted the conditions on such transfers, including the provision of "adequate types of relief." *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 838 (8th Cir.1997). There are a growing number of cases in which the strong federal policy in favor of arbitration is frustrated by parties seeking arbitration on terms which deny adequate relief, as designed by the legislature and the courts. In addition to *Paladino, see Randolph v. Green Tree Financial Corp.*, 178 F.3d 1149 (11th Cir.1999); *Simitar Entertainment, Inc. v. Silva*, 44 F.Supp.2d 986 (D.Minn.1999).

In the present case, if it were possible to strike the second quoted sentence in the arbitration provision of the Supply Agreements which limits relief, and enforcing arbitration, that might be appropriate. However, the first sentence is a limitation

---

4. Any limitation on awarding punitive damages under a state common law claim may well be against public policy for the reasons stated in *Mitsubishi Motors. Compare, Great Western Mortgage Corp. v. Peacock*, 110 F.3d 222 (3d Cir.1997), acknowledging that substantive rights of state law are not preempted but holding that issues of waiver are for the arbitrator.

on the authority of arbitrators, something the parties can doubtless agree to—even if their agreement means that arbitration provides inadequate remedies and cannot be enforced. Another alternative would be to enforce arbitration for purposes of establishing liability, but then providing successful plaintiffs with a judicial forum to obtain an appropriate remedy. That would be excessively cumbersome, as the *Paladino* majority noted. 134 F.3d at 1062. Similarly burdensome would be trying to find relief from any state law violations before the arbitrator, while developing and trying the RICO claim in this court. Again, I do not consider it feasible to separate the claims, and in any event question the supposition of the Third Circuit in *Peacock* that an arbitrator's ruling on waiver would resolve the legality of stripping parties of remedial rights created by state law.

For the foregoing reasons, I conclude that the arbitration clauses in the Supply Agreements are unenforceable, and I deny relief to defendants, except as to the franchise agreements of February 27, 1995, April 12, 1995, and October 2, 1995, entered into by plaintiffs Koch and Coddington.

### B. Fraudulent Inducement

Next, all of the plaintiffs bound by the documents to arbitrate claim that the arbitration clauses were fraudulently induced. They claim that Fleming either falsely represented to them that the new agreements were the same as the ones the plaintiffs already had with Fleming, which did not contain arbitration clauses; misrepresented to them the impact of the arbitration clause; or did not tell them of the arbitration provisions, which Fleming allegedly had a duty to do.

 Fraudulent inducement of an entire contract which happens to contain a broad arbitration clause is for the arbitrator to decide. *Prima Paint Corp. v. Flood*

*& Conklin Manufacturing Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 338 (7th Cir.1984). When the party opposing arbitration claims that the arbitration clause specifically was fraudulently induced, however, the decision is for the court. *Prima Paint*, 388 U.S. at 403–04, 87 S.Ct. 1801; *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 129 (2nd Cir.1997). In this case, the plaintiffs' allegations of fraud cannot fairly be limited to the making of the arbitration clause. Many of the plaintiffs claim that Fleming falsely represented to them that the new agreements they were signing were identical to the old agreements they had with Fleming. Even if, as they say, the most significant changes in the new agreements were the insertion of the arbitration clauses, this alleged misrepresentation still would go to the entire agreements and not just to the arbitration clauses, and would generally be an issue to be decided by the arbitrator. Assuming the alleged misrepresentations or omissions pertain specifically to the arbitration clauses, I conclude that the plaintiffs have failed to soundly assert fraud in the inducement of the arbitration clauses.

 The elements of fraudulent inducement in Missouri[5] are: (1) a representation; (2) that is false; (3) that is material; (4) the speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) the speaker's intent that the representation be acted upon; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely on it; and (9) injury. *State ex. rel. Paine-Webber v. Voorhees*, 891 S.W.2d 126, 128 (1995).

Plaintiff Koch alleges an affirmative misrepresentation as to the arbitration clause itself. When plaintiff Koch asked Fleming about the arbitration clause contained in its Franchise Agreement, Flem-

---

5. Some of the agreements state that Kansas or Oklahoma law will apply. The law of the other states on fraudulent inducement is substantially similar to Missouri law.

ing allegedly represented that the clause only pertained to Fleming's right of first refusal if Koch decided to sell its store. Because of the broad arbitration clause, this representation was false. Of the remaining plaintiffs, ten allege that the agreement containing the arbitration clause was represented by Fleming to be "identical to" or the same as the existing agreements they had with Fleming which did not contain arbitration clauses; this representation was also false.

The plaintiffs have also alleged that the misrepresentations were material. There were arbitration clauses in the agreements which would, if enforced, severely limit any amounts the plaintiffs could recover from Fleming for the alleged fraudulent activity with respect to Fleming's supplying of groceries to the plaintiffs. The plaintiffs have also alleged that Fleming knew the agreements contained arbitration clauses broad in scope, so that they knew their representations were false; that Fleming intended the plaintiffs rely upon those misrepresentations; that the plaintiffs were ignorant of the falsity of the representations; and that they suffered injury, by entering arbitration clauses which limited the damages they could recover and the discovery to which they would have been entitled absent the clauses. The only element of the alleged fraudulent inducement which is seriously at issue is the plaintiffs' right to rely on any misrepresentations by Fleming.

As defendants point out, a party to a contract has a duty to read the document it signs. *Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir.1994). The plaintiffs' failure to read the agreements, which plainly include arbitration clauses, is fatal to their fraudulent inducement claim. They could have ended their ignorance of the arbitration clauses, or the falsity of Flemings' representations that the agreements were identical to the prior agreements, by reading the new agreements. *See State ex rel. PaineWebber, Inc. v. Voorhees*, 891 S.W.2d 126, 129 (Mo.

banc 1995). Similarly, plaintiff Koch's reliance on Fleming's alleged representation that the arbitration clause contained in his Franchise Agreement pertained only to Fleming's right of refusal if he were to sell the store was not reasonable due to the clear broad language to the contrary in the arbitration clause. The plaintiffs' insistence that Fleming was their fiduciary does not excuse their failure to read the contract. *See PaineWebber*, 891 S.W.2d at 130 ("A stockbroker's [fiduciary] duty to disclose material facts does not ... include an obligation to discuss orally with a competent party conspicuous written provisions like the arbitration ... clause[ ] here."). Because the plaintiffs' reliance on any misrepresentations or omissions by Fleming as to the arbitration clauses was unreasonable, the plaintiffs have failed sufficiently to show fraudulent inducement as to the arbitration clauses and the disputes with Koch and Coddington must be arbitrated.

### Motion to Consolidate

Defendants next move the court to consolidate this case with the *Robandee* case before Judge Whipple. This court has already denied a nearly identical motion in the *Don's United Super* case, finding that there were virtually no common issues of law or of fact between the *Robandee* case and the *Don's* case. Other than arbitrability, the issues in this case are identical to the issues in *Don's*. Additionally, Judge Whipple recently denied the same motion to consolidate this case with *Robandee* filed by the defendants. For the reasons stated in the *Don's* order denying the defendants' motion to consolidate, and in Judge Whipple's order in the *Robandee* case denying the motion to consolidate, the motion in this case will also be denied.

### Motion for Summary Judgment

Defendants next move for summary judgment against plaintiff Frank's Food Mart, Inc. ("Frank's"), arguing that Frank's' claims are barred by res judicata. The question before the court is whether

the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(c). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 56(c)). Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or the allegations in the pleadings; rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Federal Rule of Civil Procedure 56(e). Although the court views the facts in a light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit. *See, e.g., Ghane v. West,* 148 F.3d 979, 981 (8th Cir.1998); *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1331 (8th Cir.1996).

 For an action to be precluded on res judicata grounds, there must be four identities between the case at bar and a prior proceeding: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of the persons and parties to the action; and 4) identity of the quality of the person for or against whom the claim is made. *King General Contractors v. Reorganized Church of Jesus Christ of Latter Day Saints,* 821 S.W.2d 495, 501 (1991). Res judicata applies not only to matters actually litigated, but extends to "every point properly belonging to the subject matter of litigation and which the parties, exercising reasonable diligence, might

have brought forward at the time." *Id.* New legal theories do not constitute new claims, even if based upon different facts or if different relief is sought. *Id.*

 Res judicata is closely related to the rule against splitting a cause of action, and both are to prevent multiple lawsuits. A cause of action is single and cannot be split if the separate actions arise out of the same act, contract or transaction, or if the parties, subject matter and evidence necessary to sustain the claim are the same in both actions. *Id.* The word "transaction" is broadly defined as "the aggregate of all the circumstances which constitute the foundation for a claim." *King,* 821 S.W.2d at 501.

 The only res judicata "identity" at issue is the identity of the thing sued for. In the previous Frank's matter, Frank's sued for determination of its rights under a lease and in response to Fleming's implementation of its FFMP pricing method for certain products it supplied to Frank's. Frank's claimed that the FFMP increased the prices Frank's ultimately paid for groceries and that it was not "generally consistent" with Fleming's Sell Plan, which was the pricing method referenced in the Supply Agreement Fleming had with Frank's. In the present suit, the plaintiffs, including Frank's, are suing for relief from Fleming's alleged systematic fraud and overcharging of its customers by artificially inflating the "cost" to Fleming of the products it supplied the plaintiffs under the Sell Plan, and later, under the FFMP. The plaintiffs do not challenge Fleming's ability to implement the FFMP under the Supply Agreement or that the FFMP is "generally consistent" with the Sell Plan. Apparently, much of the purpose of the allegations relating to Fleming's implementation of the FFMP is to show Fleming's contemporaneous acknowledgment of its overcharging schemes that it had utilized under the Sell Plan.

Furthermore, the first Frank's matter was resolved in arbitration, and res judica-

ta's preclusive effect is less forceful in the arbitration context. *Trailways Lines, Inc. v. Trailways, Inc. Joint Council,* 807 F.2d 1416, 1419 n. 7 (8th Cir.1986). Arbitration proceedings may apparently have res judicata effect even though there is no formal "adjudication," but usually this is when the two matters have "strict factual identities." *Id.* at 1425. The *Trailways* case illustrates an example of the strict factual identity which normally gives rise to an arbitration award's preclusive effect. There, an arbitrator was asked to determine whether a company's policy prohibiting beards was in compliance with the collective bargaining agreement between the company and one of its unions. A previous arbitrator had already decided this exact issue between these two parties when another employee challenged the practice. Such a strict factual identity clearly does not exist in this case. For these reasons, res judicata does not bar Frank's' action in this case, and the motion for summary judgment will be denied.[6]

For all of the above reasons, it is hereby

ORDERED that defendants' motion to compel arbitration and stay proceedings is GRANTED as to plaintiffs Koch and Coddington and otherwise DENIED. The Koch and Coddington matters shall proceed to arbitration. It is further

ORDERED that defendants' motion to consolidate this case with *Robandee United Super, Inc. et al. v. Fleming Companies, Inc.,* Case No. 97–1677–CV–W–1 is DENIED. It is further

ORDERED that defendants' motion for summary judgment against plaintiff Frank's Food Mart, Inc. is DENIED.

6. To the extent the prior arbitration has precedential value, *Trailways* shows that it may appropriately be considered.