# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 99-3202

_____

Larry's United Super, Inc.; Bi-Lo
Market, Inc.; Bob's United Super,
Inc.; Richmond Hill's United Super,
Inc.; Bob's IGA Grocery Company;
Richards, Inc.; Peach Lane, Inc.;
Westwood United Super, Inc.; Ram
Foods, Inc.; Franks Food Mart, Inc.;
ADJ, Inc.; Noland Grocery, Inc.;
Ray's Foods, Inc., a Missouri
Corporation,

        Appellees,

    v.

Dean Werries; Byron Duffield;
Fleming Companies, Inc., an
Oklahoma Corporation,

        Appellants.

\* Appeal from the United States
\* District Court for the
\* Western District of Missouri.

_____

Submitted: April 12, 2000
Filed: June 13, 2001

_____

Before BOWMAN and HANSEN, Circuit Judges, and CARMAN,[1] Judge.
_____

HANSEN, Circuit Judge.

After being sued by a group of independent retail grocers with whom it held supply agreements, the Fleming Companies, Inc. (Fleming) and two of Fleming's former officers moved to compel arbitration of the dispute. The district court denied the motion as to all of the plaintiffs but two.[2] Fleming and the former officers appeal. We reverse and remand for an order compelling arbitration of the entire dispute.

I.

The plaintiffs in the underlying diversity law suit are a group of independent retail grocers incorporated in Missouri and Kansas. They filed suit against their wholesale grocery supplier, Fleming, an Oklahoma corporation; Fleming's former chief executive officer and chairman, Dean Werries; and the former president of Fleming's Kansas City division, Byron Duffield. The grocers allege that they are each party to a supply agreement with Fleming, whereby Fleming contracted to sell them grocery and related products at actual cost plus a specified fee and freight, and promised to pass all vendor deals, discounts, and allowances on to the retail grocers. The grocers brought suit, asserting that for several years Fleming has been charging them in excess of the amounts authorized by their supply agreements, in violation of various state law provisions and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18

_____

[1]The Honorable Gregory W. Carman, Chief Judge, United States Court of International Trade, sitting by designation.

[2]The court granted the motion to compel as to two plaintiff grocers who are not parties to this appeal.

U.S.C. §§ 1961-1968 (1994 & Supp. IV 1998). Their complaint alleged seven state law-based claims and the single federal RICO claim.

Each of the appellee grocers' supply agreements contains an arbitration clause providing that the parties agree to resolve by arbitration all disputes relating to the agreement and to waive all rights to punitive damages. Relying on the agreement to arbitrate, Fleming and its former officers (hereinafter collectively called "Fleming") filed a motion to compel arbitration and to stay the underlying district court proceedings pending completion of arbitration in accordance with the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3, 4 (1994). The grocers resisted the motion, asserting fraudulent inducement of the arbitration provisions and asserting that the arbitration clauses are unenforceable because they preclude an award of punitive damages in violation of the public policy underlying RICO's treble damages provision. See 18 U.S.C. § 1964(c) (Supp. IV 1998).

Relevant to this appeal, the district court denied the motion to compel arbitration as to the appellee grocers. While it denied the motion to compel arbitration, the court did conclude that the arbitration provisions in the supply agreements are broad enough to cover the entire dispute between the parties (including the seven counts based on state law claims) and were not fraudulently induced. Nevertheless, the court agreed with the grocers that the damages limitation provisions contained in the agreements to arbitrate defeat the purposes of RICO and prevent the grocers from obtaining adequate relief in arbitration. Fleming and its former officers appeal, arguing initially that the limitation of damages is not illegal, and alternatively, that the severability provisions of the supply agreements should be applied to salvage the agreements to arbitrate. Under the alternative argument, Fleming says all the counts can and should be sent to arbitration but without the damage limitation on the RICO claim.

II.

We have jurisdiction under the FAA to review the district court's order refusing to compel arbitration and to stay the court proceedings.  See Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994) (citing 9 U.S.C. § 16(a)(1)(A), (B)).  We review de novo a district court's decision regarding the validity and scope of an arbitration clause.  Storey v. Shearson Lehman Hutton, Inc., 949 F.2d 1039, 1040 (8th Cir. 1991).  "When a party moves to compel arbitration, our role is to determine whether there is an agreement between those parties which commits the subject matter of the dispute to arbitration."  ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc., 133 F.3d 664, 668 (8th Cir. 1998).  In other words, we must determine whether there is a valid agreement to arbitrate and whether the specific dispute at issue falls within the substantive scope of that agreement.  Daisy Mfg. Co., 29 F.3d at 392. We bear in mind that the FAA's "provisions manifest a 'liberal federal policy favoring arbitration agreements.'"  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).

The supply agreements each contained an arbitration clause broadly declaring that the parties agree to arbitrate "all disputes between them relating to this Agreement."  (Appellants' Adden. at A-16.)  While not all controversies implicating federal statutory rights may be suitable for arbitration, the Supreme Court has held that RICO claims are arbitrable.  See Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 242 (1987); see also Daisy Mfg. Co., 29 F.3d at 396 (noting "[c]ivil RICO claims are subject to arbitration").  The RICO claim at issue relates to the supply agreements because the grocers assert that Fleming has been overcharging them in amounts greater than bargained for under the supply agreements.  The parties do not dispute that the contract's arbitration language in the supply agreements is broad

4

enough to include the RICO dispute at issue, and we agree that the language covers this dispute. We conclude that the district court correctly determined that the parties agreed to arbitrate all the claims including the RICO claim.

Fleming contends that the district court erred by determining that the arbitration agreement is invalid due to a limitation on punitive damages. The district court concluded that this limitation violated the public policy of RICO, and thus held the entire arbitration agreement unenforceable. We agree with Fleming that the damages limitation does not render unenforceable the entire agreement to arbitrate.

"[A] court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided." Great Western Mtg. Corp. v. Peacock, 110 F.3d 222, 230 (3d Cir.), cert. denied, 522 U.S. 915 (1997). In Peacock, the Third Circuit held that "[a]ny argument that the provisions of the Arbitration Agreement involve a waiver of substantive rights afforded by the state statute may be presented in the arbitral forum." Id. at 231. We conclude that this statement is equally applicable to explicit waivers of substantive rights under federal statutes. Whether federal public policy prohibits an individual from waiving certain statutory remedies is an issue that may be raised when challenging an arbitrator's award. See Homestake Mining Co. v. United Steelworkers of Am., 153 F.3d 678, 680 (8th Cir. 1998) (noting that an arbitrator's award may be challenged on public policy grounds and may be overturned if "it is contrary to a well-defined and dominant policy embodied in laws and judicial precedent") (internal quotations omitted). Given the limited scope of our authority on a motion to compel arbitration, we agree with the Third Circuit that "[o]nce a dispute is determined to be validly arbitrable, all other issues are to be decided at arbitration." Peacock, 110 F.3d at 230.

We respectfully decline at this time to follow the lead of the circuit cases which the district court found supported its decision to deny arbitration on the grounds of public policy. See Paladino v. Avnet Computer Techs., Inc., 134 F.3d 1054, 1062 (11th

5

Cir. 1998); Graham Oil Co. v. Arco Prods. Co., 43 F.3d 1244, 1248-49 (9th Cir.), cert. denied, 516 U.S. 907 (1995). In large part, those cases are distinguishable, and to the extent they are not distinguishable, we choose not to follow them now.

At this juncture, our jurisdiction extends only to determine whether a valid agreement to arbitrate exists, not to determine whether public policy conflicts with the remedies provided in the arbitration clause. There exists a valid agreement to arbitrate the RICO claim in this case, and the Supreme Court in McMahon has already determined that RICO claims are arbitrable, 482 U.S. at 242; thus, there exists no "legal constraints external to the parties' agreement foreclos[ing] the arbitration" of this RICO dispute. Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Whether a prospective waiver of punitive damages violates the public policy underlying RICO's treble damages provision is a matter for the arbitrators in the first instance when fashioning an appropriate remedy if a RICO claim is proven to the arbitrators' satisfaction, and we express no views on the issue at this time. We are limited to determining whether the matter is arbitrable. We hold that it is.

The retail grocers argue alternatively that the arbitration clause is invalid because it was fraudulently induced by misrepresentations of Fleming. The district court rejected this claim, concluding that the grocers' "reliance on any misrepresentations or omissions by Fleming as to the arbitration clauses was unreasonable." Coddington Enters., Inc. v. Werries, 54 F. Supp. 2d 935, 943 (W.D. Mo. 1999). We agree with the district court's conclusion that the grocers had a duty to read the documents they signed, and because they failed to read the new supply agreements, they cannot now claim fraudulent inducement or ignorance of the arbitration clauses.

## III.

Accordingly, we reverse and remand this case to the district court with instructions to enter an order compelling arbitration of the entire dispute, and we leave to the arbitrators what effect, if any, to give to the damage limitation language if indeed damages are awarded by them for any claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.