United States Court of Appeals,

Eleventh Circuit.

No. 96-2341.

Ellen Sue PALADINO, Plaintiff-Appellee,

v.

AVNET COMPUTER TECHNOLOGIES, INC., a Delaware corporation doing business in the State of Florida, Defendant-Appellant.

Feb. 4, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-922-CIV-ORL-18), G. Kendall Sharp, Judge.

Before HATCHETT, Chief Judge, and TJOFLAT and COX, Circuit Judges.

HATCHETT, Chief Judge:

Avnet, Inc., appeals a district court ruling refusing to compel arbitration in a former employee's lawsuit alleging violations of Title VII and Florida law. We affirm.

FACTS

From September 23, 1992, until January 13, 1994, Ellen Sue Paladino worked for Avnet, Inc. (Avnet), as a Regional Technical Sales Consultant for the Southeastern United States. Prior to beginning work, Paladino signed a handbook acknowledgment containing a "consent to arbitration" agreement. The arbitration agreement (which was in smaller type than the handbook's text) provided as follows:

IMPORTANT NOTICE: READ THIS CAREFULLY

....

CONSENT TO ARBITRATION

I recognize that during the course of my employment differences can arise between the Company and me. To that end, *the Company and I consent to the settlement by arbitration*

*of any controversy or claim arising out of or relating to my employment or the termination of my employment.*  Arbitration shall be in accordance with the commercial rules of the American Arbitration Association before a panel of three arbitrators in or near the city where I am principally employed.  The Company and I further consent to the jurisdiction of the highest court of original jurisdiction of the state where I am principally employed, and of the United States District Court in the District where the arbitration takes place, for all purposes in connection with the arbitration, including the entry of judgment on any award.  *The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages.*

(Emphasis added.)

On January 13, 1994, Avnet fired Paladino.  Paladino subsequently obtained a right to sue letter from the Equal Employment Opportunity Commission and, on September 8, 1995, filed this lawsuit against Avnet alleging violations of Title VII, a Florida anti-discrimination statute and Florida's common law.  The lawsuit requested wide-ranging relief for the alleged violations, including back pay, reinstatement, damages for emotional pain and suffering, reputational harms, injunctive relief, costs and attorney's fees.  On November 22, 1995, Avnet responded to Paladino's lawsuit with a motion to stay proceedings and compel arbitration, based on the arbitration agreement described above and provisions of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, which require the courts to stay proceedings and compel arbitration under certain circumstances.  Paladino and Avnet then filed a series of legal briefs on Avnet's pending motion, and, on December 19, 1995, the district court denied the motion.  Avnet filed this appeal.

ISSUE

Avnet advances a single issue on appeal:  whether the district court erred in refusing to stay this action and compel the parties to submit the issues raised in the complaint to arbitration.

JURISDICTION AND STANDARD OF REVIEW

Jurisdiction over Avnet's appeal from an order denying a motion to stay proceedings and compel arbitration is proper pursuant to 9 U.S.C. § 16(a).  *Accord Hornbeck Offshore (1984) Corp.*

*v. Coastal Carriers Corp. (In re Complaint of Hornbeck Offshore (1984) Corp.),* 981 F.2d 752, 754 (5th Cir.1993).[1] We conduct a *de novo* review of a district court's order denying a motion to compel arbitration. *Kidd v. Equitable Life Assur. Soc'y of Am.,* 32 F.3d 516, 518 (11th Cir.1994).

## DISCUSSION

This case requires us to apply basic principles of contract interpretation in harmony with a general federal policy in favor of arbitration. The federal policy is expressed in

> [t]he Federal Arbitration Act [which] was originally enacted in 1925 and then reenacted and codified in 1947 as Title 9 of the United States Code. Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.

*Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1470 (D.C.Cir.1997) (internal quotations and citations omitted). Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994). Section 3 of the FAA authorizes federal district courts, upon application of a party, to stay proceedings regarding "any issue referable to arbitration under an agreement in writing for such arbitration ... until such arbitration has been had in accordance with the terms of the

---

[1] It is assumed that the exception contained in section 1 of the FAA for "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" does not apply to the agreement at issue here. It is best not to decide this issue because it is unclear that the district court fully considered it, and because Paladino failed to adequately develop the record with respect to her actual responsibilities as a Regional Technical Sales Consultant for the Southeastern United States. Although a majority of the circuits that have addressed the section 1 exception have construed it narrowly, see *Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1470-72 (D.C.Cir.1997) (listing cases and adopting narrow construction of section 1's scope), a considerable body of scholarly opinion suggests that those circuits' view of section 1 is incorrect. *See generally* Joseph R. Grodin, *Arbitration of Employment Discrimination Claims: Doctrine and Policy in the Wake of Gilmer,* 14 Hofstra Lab. L.J. 1 (1996); Matthew W. Finkin, *"Workers' Contracts" Under the United States Arbitration Act: An Essay in Historical Clarification,* 17 Berkley J. Emp. & Lab. L. 282 (1996). The issue of section 1's scope was raised, but not decided, in the Supreme Court's *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), decision.

agreement." 9 U.S.C. § 3 (1994). Section 4 of the FAA grants federal district courts the power to compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4 (1994).

The FAA does not "require parties to arbitrate what they have not agreed to do so, ... nor does it prevent parties who do agree to arbitrate from excluding certain claims from the scope of their arbitration agreement." *American Express Fin. Advisors, Inc. v. Makarewicz,* 122 F.3d 936, 940 (11th Cir.1997) (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 1255, 103 L.Ed.2d 488 (1989)). The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945, 115 S.Ct. 1920, 1924-25, 131 L.Ed.2d 985 (1995) (issues will be deemed arbitrable unless it is clear that the arbitration clause has not included them). Presumption notwithstanding, "the courts are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Goldberg v. Bear, Stearns & Co.,* 912 F.2d 1418, 1419-20 (11th Cir.1990).

In this case we are faced with an arbitration agreement whose scope is defined in two clauses. The first clause states in a general fashion that Avnet and Paladino "consent to the settlement by arbitration of any controversy or claim arising out of or relating to ... [Paladino's] employment or the termination of ... [her] employment." Viewed in isolation, this clause appears all-inclusive, embracing both breach of contract and statutory claims. The arbitration agreement contains a second clause, however, that muddies the waters considerably. That clause states that "[t]he arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages."

The second clause can be read two ways: as a clarification of the types of claims the parties intended to submit to arbitration, *i.e.,* only breach of contract claims, or as an explicit limitation on remedies available for any claims submitted to arbitration. Avnet urges us to construe the second clause as a limitation on remedies, and not as a statement about the types of claims the parties agreed to arbitrate. Avnet further urges that this court should then find the limitation on remedies inapplicable to Paladino's statutory claims if those statutes authorize remedies that a party cannot be required to waive as a condition of employment. Stated more plainly, Avnet urges us to declare that it has entered into a valid arbitration agreement with an invalid limitation of remedies clause that should be stricken for purposes of resolving its dispute with Paladino. Paladino responds, in part, with an argument that the arbitration agreement Avnet authored unconstitutionally denies her access to the courts, and should be stricken in its entirety.[2]

At first glance, Avnet's suggested approach seems appealing: it sends the parties to arbitration, in accordance with the federal policy favoring arbitration, but preserves Paladino's right to benefit from statutory remedies. Upon closer examination, however, Avnet's suggested approach is far more problematic. This is so because the presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation. *See, e.g., Graham Oil v. Arco Prods. Co.,* 43 F.3d 1244, 1248-49 (9th Cir.1994) (arbitration clause that purported to waive federal statutory remedies and to shorten statute of limitations for filing statutory claims was unenforceable), *cert.*

---

[2]Paladino also makes the following arguments: (1) that no binding arbitration agreement exists because her signature on a handbook acknowledgment form cannot constitute a contract under Florida law; (2) that any agreement that does exist is *void ab initio* because of *fraud in factum;* and (3) that the FAA exempts employees who are involved in interstate commerce. Because we resolve this case on contract interpretation grounds—which we construe Paladino's access to the courts argument to present—we do not address Paladino's other arguments.

*denied* --- U.S. ----, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995); *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 60 Cal.Rptr.2d 138 (1997) (finding unconscionable and unenforceable an arbitration clause that, *inter alia,* limited remedy available in arbitration to a money award not to exceed the amount of actual damages for breach of contract); *see also* E. Allan Farnsworth, *Farnsworth on Contracts* § 5.8, at 70 (1990) (severance is inappropriate when the entire provision represents an "integrated scheme to contravene public policy").

"It is well understood that, where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful." *Cole,* 105 F.3d at 1486. Accordingly, the clause at issue is best construed as a gloss explaining the types of claims that the parties intended to submit to arbitration, rather than as a potentially unlawful limitation of statutory remedies. *See* Restatement of Contracts § 203(a) (1981) ("an interpretation which gives a reasonable, lawful and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); *see also Goldberg,* 912 F.2d at 1421 ("Where general propositions in a contract are qualified by the specific provisions, the rule of construction is that the specific provisions in the agreement control.").

The court in *Alcaraz v. Avnet, Inc.,* 933 F.Supp. 1025 (D.N.M.1996), employed an identical construction to the very same arbitration agreement clauses at issue here. In *Alcaraz,* the plaintiff brought a civil rights action against Avnet under Title VII and the Age Discrimination in Employment Act (ADEA). 933 F.Supp. at 1026. Avnet relied on the same arbitration agreement language at issue in the case at bar, and moved to compel arbitration. 933 F.Supp. at 1026. The plaintiff argued that the terms of Avnet's arbitration agreement precluded referral of his lawsuit to arbitration. 933 F.Supp. at 1027. Avnet argued in response that the limitation of remedies provision in its arbitration agreement should have no bearing on whether the plaintiff's claims were arbitrable,

and that the arbitration agreement encompassed statutory claims based on Title VII and the ADEA. 933 F.Supp. at 1028. The district court agreed with the plaintiff. The district court first noted that "in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute, and determining intent is a question of law for the court." 933 F.Supp. at 1027. The district court next observed that Avnet's agreement contained language that proscribed the arbitrator's authority to award any damages under Title VII or the ADEA. The district court then reasoned that "if by terms of the Agreement, the arbitrator has no authority to award any damages under Title VII or the ADEA, then the parties did not intend to submit Title VII or ADEA claims to arbitration." 933 F.Supp. at 1027. Based on this reasoning, the district court denied Avnet's motion to compel arbitration. 933 F.Supp. at 1028.

The conclusion that the *Alcaraz* court reached is fully consistent with the federal presumption in favor of arbitrability. As suggested above, this interpretation of Avnet's arbitration agreement saves that agreement from being held unenforceable in its entirety. The interpretation thus heightens the likelihood that Avnet will be able to rely on the FAA to have at least some of its disputes with employees resolved via arbitration in the future.[3]

This approach also remains true to our precedents, most particularly our recent holding in *Brisentine v. Stone & Webster Engineering Corp.,* 117 F.3d 519 (11th Cir.1997), where we indicated that

> a mandatory arbitration clause does not bar litigation of a federal statutory claim, unless three requirements are met. First, the employee must have agreed individually to the

---

[3]Although Avnet mentions its common law claims in its initial description of the issue on appeal, it has advanced no substantive argument in its brief or at oral argument to the effect that Paladino's common law claim should be subject to arbitration even if her statutory claims are not. We thus deem that argument abandoned. *See Greenbriar, Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 n. 6 (11th Cir.1989) (issues not argued on appeal are deemed waived, and a passing reference in an appellate brief is insufficient to raise an issue).

contract containing the arbitration clause.... *Second, the agreement must authorize the arbitrator to resolve federal statutory claims—it is not enough that the arbitrator can resolve contract claims, even if factual issues arising from those claims overlap with the statutory claim issues.* Third, the agreement must give the employee the right to insist on arbitration if the federal statutory claim is not resolved to his satisfaction in any grievance process.

117 F.3d at 526-27 (emphasis added).

*Brisentine* does not stand for the proposition that an arbitration agreement must specifically list every federal or state statute it purports to cover. *See, e.g., Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 (11th Cir.1992) (finding that Title VII claims were subject to arbitration where the arbitration agreement stated that the parties agreed to arbitrate "any dispute, claim or controversy that may arise between me and my firm, or a customer or any other person that is required to be arbitrated under the rules, constitution or by-laws of the organizations with which I register"). To fall within the FAA's ambit, however, an arbitration agreement that purports to cover statutory claims must contain terms that generally and fairly inform the signatories that it covers statutory claims. The arbitration agreement's terms regarding remedies must also be fully consistent with the purposes underlying any statutory claims subject to arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 1652, 114 L.Ed.2d 26 (1991) (" "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum' ") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985)). This is so because "the beneficiaries of public statutes are entitled to the rights and protections provided by the law," including "all of the types of relief that would otherwise be available in court." *Cole,* 105 F.3d at 1482.

In this case, Avnet's arbitration agreement is woefully deficient, at least to the extent that it purports to cover statutory claims. First, it does not generally and fairly inform Paladino—a worker

who is presumably not trained to decipher legalese—that it covers statutory claims such as Title VII claims. Rather it states in one clause that it covers "any controversy or claim arising out of or relating to" her employment or termination, and states in another clause that arbitrators shall have authority to award damages for "breach of contract only." This confusing language is a far cry from the clear language we approved of in *Bender,* or from language that other courts have found sufficient to provide an employee fair notice. *See, e.g., Cole,* 105 F.3d at 1469 (approving arbitration agreement that read as follows:

> This pre-dispute resolution agreement will cover all matters directly or indirectly related to your recruitment, employment or termination of employment by the Company; including, but not limited to, claims involving laws against discrimination whether brought under federal and/or state law, and/or claims involving co-employees but excluding Worker's Compensation Claims.)

Second, Avnet's arbitration agreement contains language which, if read as Avnet proposes, is fundamentally at odds with the purposes of Title VII because it completely proscribes an arbitral award of Title VII damages. *See Alcaraz,* 933 F.Supp. at 1028 (the "[a]greement at issue here precludes an arbitrator from awarding *any* kind of damages other than contract damages").

## CONCLUSION

Given the deficiencies and limited nature of this arbitration agreement, the district court properly declined to compel arbitration of Paladino's lawsuit alleging statutory anti-discrimination claims. We therefore affirm the district court's order and remand this case for further proceedings.

AFFIRMED and REMANDED.

COX, Circuit Judge, joined by TJOFLAT, Circuit Judge:

We agree with Chief Judge Hatchett that the district judge correctly refused to compel arbitration. But we disagree that the arbitration clause at issue excludes Title VII claims. We hold rather that the clause includes Title VII claims, but that (as Chief Judge Hatchett observes) it

deprives the employee of any prospect for meaningful relief and is therefore unenforceable.

### 1. *Background*

"In consideration of [her] employment by" the defendant Avnet, Inc., Ellen Paladino consented to

> settlement by arbitration of any controversy or claim arising out of or relating to [her] employment or the termination of [her] employment. Arbitration shall be in accordance with the commercial rules of the American Arbitration Association before a panel of three arbitrators in or near the city where [she is] principally employed.... The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages.

(R.-6 Ex. A.) After being terminated, Paladino sued Avnet under Title VII, alleging gender discrimination. She seeks back pay, reinstatement or front pay, and attorney's fees. Paladino refused to arbitrate the claim, and Avnet immediately moved for a stay and to compel arbitration pursuant to the Federal Arbitration Act (FAA) §§ 3, 4. *See* 9 U.S.C. §§ 3, 4 (1994). The district judge denied the motion. No opinion appears in the record.

Avnet appeals the denial of the motion to compel. This court reviews the district court's ruling de novo because it is a matter of law. *See Kotam Elecs., Inc. v. JBL Consumer Prods., Inc.,* 93 F.3d 724, 725 (11th Cir.1996) (en banc), *cert. denied,* --- U.S. ----, 117 S.Ct. 946, 136 L.Ed.2d 835 (1997).

### 2. *Discussion*

a. *Applicability of the Federal Arbitration Act*

The FAA governs Avnet's motion. The FAA's provisions concerning the validity of arbitration clauses reach to the edge of Congress's power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 838, 130 L.Ed.2d 753 (1995). No one disputes that Avnet is engaged in interstate commerce.

Furthermore, the appearance of the arbitration clause in an employment contract does not

exempt the clause from the FAA under that Act's first section. All but one of the other circuits to have addressed the issue have held that the FAA § 1's exemption of "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, includes only employees actually engaged in transportation of goods in commerce. *See Cole v. Burns Int'l Security Servs.,* 105 F.3d 1465, 1470 (D.C.Cir.1997); *Rojas v. TK Communications, Inc.,* 87 F.3d 745, 748 (5th Cir.1996); *Asplundh Tree Expert Co. v. Bates,* 71 F.3d 592, 598 (6th Cir.1995); *Dickstein v. duPont,* 443 F.2d 783, 785 (1st Cir.1971); *Pietro Scalzitti Co. v. International Union of Operating Eng'rs,* 351 F.2d 576, 579-80 (7th Cir.1965); *Signal-Stat Corp. v. Local 475, United Elec. Radio & Machine Workers,* 235 F.2d 298, 302-03 (2d Cir.1956); *Tenney Eng'g, Inc. v. United Elec. Radio & Machine Workers, Local 437,* 207 F.2d 450, 453 (3d Cir.1953) (en banc). This construction accords with the statute's text and history. *See Cole,* 105 F.3d at 1470-71. Although the district court may not have addressed this issue (we have no opinion in the record to tell us), the issue is presented in this case, and we join these other circuits.

According to the allegations of the complaint—the only facts we have at present—Paladino provided technical support to computer system salespeople. There is no evidence that this required her to move goods in interstate commerce. The employment contract therefore does not fall within § 1's exclusion.

b. *Construing the Arbitration Clause*

The FAA puts arbitration clauses on even footing with all other clauses in a contract. *See Allied-Bruce Terminix Cos.,* 513 U.S. at 275, 115 S.Ct. at 840. They are therefore interpreted according to ordinary state-law rules of contract construction. *See First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). The parties' intent governs what claims are arbitrable, and we look to the wording of the clause itself, giving effect to

every provision, to determine the intent.[1]  *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 59, 115 S.Ct. 1212, 1217, 131 L.Ed.2d 76 (1995);  *Premier Ins. Co. v. Adams,* 632 So.2d 1054, 1057 (Fla.Ct.App. 5th Dist.1994) (contracts interpreted as whole);  *Royal Oak Landing Homeowner's Ass'n, Inc. v. Pelletier,* 620 So.2d 786, 788 (Fla.Ct.App. 4th Dist.1993) (intent, as expressed in unambiguous contract language, controls);  *Berry v. Berry,* 550 So.2d 1125, 1126 (Fla.Ct.App.3d Dist.1989) ("[A] contract is ordinarily to be construed as a matter of law by giving effect to the intent of the parties as expressed by the terms of the agreement.")

Two provisions of the arbitration clause here describe arbitrable claims and available remedies.  The first unambiguously includes all claims:  it extends the clause to "any controversy or claim arising out of or relating to my employment or the termination of my employment."  "Any" is not ambiguous, and if any claim "aris[es] out of ... termination," it is a Title VII gender-discrimination claim.  This provision makes Title VII claims arbitrable, as this circuit has held for language that is materially similar.  *See Bender v. A.G. Edwards & Sons, Inc.,* 971 F.2d 698, 700 n. 1 (11th Cir.1992) (Title VII claim included in "any dispute, claim or controversy that may arise between me and my firm").

The second relevant provision, however, just as plainly circumscribes the arbitrator's authority to grant relief.  That provision divests the arbitrator of jurisdiction to award any relief in a Title VII action:  "The arbitrator is authorized to award damages for breach of contract only, and shall have no authority whatsoever to make an award of other damages."  Title VII actions are, of course, not contractual.  *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 49, 94 S.Ct. 1011, 1020, 39 L.Ed.2d 147 (1974).  Thus, if an arbitrator were to award Paladino classic Title VII relief

---

[1]The parties do not say what state's law applies;  since Paladino was employed in Orlando, we assume that Florida law applies.  These principles of contract construction are, in any event, matters of hornbook law.

such as back pay or reinstatement, a court applying the FAA could vacate the award. *See* 9 U.S.C. § 10(a)(4); *Eljer Mfg., Inc. v. Kowin Dev. Corp.,* 14 F.3d 1250 (7th Cir.1994) (affirming vacatur of award of damages outside the scope of the arbitration agreement).

These two provisions are not inconsistent; they should rather be read together. So read, they work hand-in-glove to make it difficult for the employee to obtain any relief. The employee must go to arbitration. Arguably, the employee can get a bare finding of liability there, but nothing more. The advantages to the drafter, Avnet, which imposed the agreement as a condition of employment, are obvious. Not only does it avoid discovery and other expenses of in-court litigation; it also is safe from damages. The words are plain, and the intent behind them apparent. There is no need, therefore, to resort to any other contract construction rules.

We therefore conclude that the arbitration clause includes Title VII claims within its scope, but denies the employee the possibility of meaningful relief in an arbitration proceeding.

c. *Enforceability of the Clause*

Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991). Title VII claims are no exception to this rule. *See Bender,* 971 F.2d at 700. But the arbitrability of such claims rests on the assumption that the arbitration clause permits relief equivalent to court remedies. *See Gilmer,* 500 U.S. at 28, 111 S.Ct. at 1653. When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable. *See Cole v. Burns Int'l Sec. Servs.,* 105 F.3d 1465, 1468 (D.C.Cir.1997).

This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief. *Cf. Brisentine v. Stone & Webster Eng'g Corp.,* 117 F.3d 519, 526-27

(11th Cir.1997) (listing as one of the factors rendering a collective-bargaining arbitration clause unenforceable the arbitrator's lack of authority to resolve statutory claims). Arguably, Paladino could hope for a finding of liability from the arbitrator. In that event, she would still have to repair to a judicial forum to pursue any Title VII remedy. These difficulties considered, we treat this clause as an impermissible waiver of Title VII rights. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 51-52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974); *Schwartz v. Florida Bd. of Regents,* 807 F.2d 901, 906 (11th Cir.1987).

The difficulty of obtaining meaningful relief is not, moreover, the only infirmity of this clause. Because Avnet makes no promises to pay for an arbitrator, employees may be liable for at least half the hefty cost of an arbitration and must, according to the American Arbitration Association rules the clause explicitly adopts, pay steep filing fees (in this case $2000).[2] One circuit has in dicta stated that such "fee-shifting" is a per se basis for nonenforcement. *Cole,* 105 F.3d at 1484. We consider costs of this magnitude a legitimate basis for a conclusion that the clause does not comport with statutory policy.

Arbitration ordinarily brings hardships for litigants along with potential efficiency. Arbitral litigants often lack discovery, evidentiary rules, a jury, and any meaningful right to further review. In light of a strong federal policy favoring arbitration, these inherent weaknesses should not make an arbitration clause unenforceable. *See Gilmer,* 500 U.S. at 30-31, 111 S.Ct. at 1654-55 (listing disadvantages of arbitration that do not prevent its use). *But see Cole,* 105 F.3d at 1482 (taking lack of discovery into account to determine enforceability). But a clause such as this one that deprives an employee of any hope of meaningful relief, while imposing high costs on the employee,

---

[2]Paladino's complaint does not seek a specific amount of damages; such claims incur a $2000 filing fee. AAA Commercial Arbitration Rules Fee Schedule.

undermines the policies that support Title VII. It is not enforceable.

### 3. *Conclusion*

For these reasons, we affirm the district court.

AFFIRMED.