[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2001
THOMAS K. KAHN
CLERK

_____

No. 00-13489

_____

D. C. No. 00-00686-CV-KMM

DAMIANA PEREZ,

Plaintiff-Appellee,

versus

GLOBE AIRPORT SECURITY SERVICES, INC.

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 12, 2001)**

Before TJOFLAT and DUBINA, Circuit Judges, and SHAPIRO*, District Judge.

_____

* Honorable Norma L. Shapiro, U.S. District Judge for the Eastern District of Pennsylvania,
sitting by designation.

SHAPIRO, Disttict Judge:

Defendant Globe Airport Security ("Globe") appeals an order of the district court denying its motion to compel arbitration. Because the arbitration agreement unlawfully denies plaintiff-appellee Damiana Perez ("Perez") remedies available under Title VII, we affirm.

## FACTUAL BACKGROUND

Perez worked for Globe as a pre-departure security agent at the Miami International Airport. To obtain employment with Globe, Perez was required to sign a Pre-dispute Resolution Agreement ("arbitration agreement" or "Agreement") calling for the arbitration of any and all disputes relating to her employment. The Agreement states:

> In consideration of the Company employing you, you and the Company each agree that, in the event either party (or its representatives, successors, or assigns) brings an action in an agency or court of competent jurisdiction relating to you recruitment, employment with, or termination of employment from the Company, the party bringing such action agrees to waive his, her or its right to a trial by jury, and further agrees that no demand, request or motion will be made for a trial by jury. Each party agrees to pay the costs and attorneys' fees to the other party in the event of a breach of this agreement.

> In consideration of the Company employing you, you further agree that, in the event that you seek relief in an agency or court of competent jurisdiction for a dispute covered by this Agreement, the Company may, at any time within 90 days of the service of your complaint upon the Company, at its sole option, require all or part of the dispute to be arbitrated by one arbitrator in accordance with the

American Arbitration Association governing labor arbitration. You agree that the option to arbitrate any such dispute is governed by the Federal Arbitration Act and fully enforceable. You understand and agree that, if the Company exercises its option, any dispute arbitrated will be heard solely by an arbitrator and not by a court or agency, that the decision of the arbitrator will be final and binding on both parties, and that such decision will bar any further relief of any kind in any forum of all issues that were or could have been brought, except those the Company specifically excluded from such arbitration. The Company and you agree that, despite any rule providing that any one party must bear the cost of filing and/or the arbitrator's fees, all costs of the American Arbitration Association and all fees imposed by any arbitrator hearing the dispute, will be shared equally between you and the Company. If you refuse to arbitrate after the Company has demanded you do so, and if a court orders arbitration, you agree to pay the Company's legal costs, including attorney's fees, incurred in enforcing this agreement. To insure the speedy resolution of any dispute, you agree that you submit your claim(s) to the American Arbitration Association within sixty (60) days of the Company's demand for arbitration under this agreement, and that failure to do so will forever bar any claim that was or could have been asserted in any forum whatsoever.

This pre-dispute resolution agreement will cover all matters directly or indirectly related to you recruitment, hire, employment or termination of employment by the Company; including, but not limited to, claims involving laws against discrimination whether brought under federal and/or state law; and/or claims involving co-employees, but excluding Worker's Compensation claims. You further agree that this agreement covers all parties to the lawsuit to which the Company is a party, but only the Company has standing to enforce this agreement to avoid piecemeal litigation.

The right to a trial, and a trial by jury, is of value.

YOU MAY WISH TO CONSULT AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT. IF SO, TAKE A COPY OF THIS FORM WITH YOU. HOWEVER, YOU WILL NOT BE OFFERED

EMPLOYMENT UNTIL THIS AGREEMENT IS SIGNED AND RETURNED BY YOU.

In February, 1999, Perez's employment with Globe ended. Perez contends she was terminated, but Globe asserts she abandoned her job. In February, 2000, Perez filed this action alleging gender discrimination in violation of Title VII. Globe, answering the complaint, raised the arbitration agreement as an affirmative defense. Moving to compel arbitration under § 4 of the Federal Arbitration Act, Globe requested that the trial court dismiss or stay the court action. Perez argued in opposition that: (1) her employment disputes were not governed by the Federal Arbitration Act because she was an employee engaged in foreign or interstate commerce; (2) the fee-sharing provision rendered the agreement unenforceable; and (3) the agreement was void because she did not understand what she was signing.

Based on evidence of the financial circumstances of Perez and the costs of arbitration, the district court found the fee-sharing provision created an unreasonable barrier to assertion of Title VII rights because the required arbitration would be prohibitively expensive for Perez. The district court denied Globe's motion to compel arbitration; this appeal followed.

**JURISDICTION AND STANDARD OF REVIEW**

3

This court has jurisdiction over an appeal from an order denying a motion to compel arbitration under the Federal Arbitration Act. 9 U.S.C. § 16(a). The standard of review is *de novo*. See Kidd v. Equitable Life Assur. Soc'y of Am., 32 F.3d 516, 518 (11th Cir. 1994).

## DISCUSSION

*A. The Applicability of the Federal Arbitration Act*

The validity of an agreement to arbitrate is generally governed by the Federal Arbitration Act ("FAA" or the "Act"), enacted in 1925 to reverse longstanding judicial hostility to arbitration. See Gilmer v. Interstate Johnson Lane Corp., 500 U.S. 20, 24 (1991). The Act requires a court to enforce a written arbitration agreement as it would any other contract. See 9 U.S.C. § 2 ("A written provision . . . to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."); see also Paladino v. Avnet Computer Technologies, Inc., 134 F.3d 1054, 1061 (11th Cir. 1998). The FAA embodies a liberal federal policy favoring arbitration agreements. See Randolph v. Green Tree Fin. Corp., 244 F.3d 814, 818 (11th Cir. 2001).

Perez claims the FAA does not govern this dispute because § 1

4

exempts from the FAA's coverage arbitration agreements contained in "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Perez, a pre-departure security agent at Miami International Airport, argues she was engaged in interstate commerce because "she inspected goods, materials, and people that were headed to locations around the United States and, indeed, around the world."

The Supreme Court has now held that the FAA's "engaged in commerce" exception should be narrowly construed to apply only to transportation workers. See Circuit City v. Adams, — U.S. — , 121 S.Ct. 1302, 1306 (2001). The § 1 exception specifically names two classes of exempt workers, seamen and railroad employees, and the final exempt group, workers engaged in commerce, must be defined in light of the narrowness of the other two exemptions. Id. at 1311. In Circuit City, the Court cited with approval a definition adopted by the Court of Appeals for the District of Columbia Circuit in Cole v. Burns Int'l Security Services: workers "actually engaged in the movement of goods in interstate

5

commerce."[1]  105 F.3d 1465, 1471 (D.C. Cir. 1997); see Circuit City, 121

S.Ct. at 1307.

In Cole, a security guard working in Union Station was held not

"engaged in commerce" under § 1 of the FAA, because he did not participate

in the actual movement of goods in commerce.  See Cole, 105 F.3d at 1472.

Likewise Perez, an airport security guard, was not engaged in the

transportation of goods in commerce; she merely inspected or guarded such

goods prior to their transport.  The "engaged in commerce" exemption does

not apply, so the FAA governs this dispute.

B.  *The Expense of Arbitration*

The district court found the fee-sharing provision rendered the

arbitration agreement unenforceable because it inhibited Perez from

asserting her statutory rights by requiring her to advance costs and fees she

could not afford.  Subsequent to that decision, the Supreme Court held,

"where a party seeks to invalidate an arbitration agreement on the ground

that arbitration would be prohibitively expensive, that party bears the burden

of showing the likelihood of incurring such costs."  Green Tree Fin. Corp. v.

---

[1]  This court had previously held the exception applied only to "employees actually engaged in transportation of goods in commerce."  Paladino, 134 F.3d at 1061 (citing Cole, 105 F.3d at 1470).  The recent Supreme Court decision affirmed the validity of that definition.

6

Randolph, — U.S. — , 121 S.Ct. 513, 522 (2000).  Globe asserts that Perez

failed to show she would incur prohibitive expenses by pursuing arbitration.[2]


The arbitration agreement before the Court in Green Tree did not

specify which party would bear the initial costs of arbitration.  See Green

Tree, 121 S.Ct. at 531.  Here, the arbitration agreement expressly provides

that the parties must share the fees and costs of arbitration equally, and Perez

produced evidence of her income and the costs of arbitration before the

district court to prove those costs would inhibit her from pursuing her

claims.  However, this court need not determine whether the evidence of

arbitration expense produced by Perez was sufficient to find arbitration

prohibitively expensive.  The Agreement is illegal and unenforceable for

other compelling reasons.

*C.  Illegality of the Costs and Fees Provision*

---

[2]  At oral argument, Globe argued that the arbitration would not be prohibitively expensive because Globe was willing to forgo use of the American Arbitration Association ("AAA"), required by the Agreement, in favor of less expensive, private arbitration.  Globe's proposal to use private arbitration constituted an offer to modify the written agreement.  Perez's rejection of that offer to modify leaves the Agreement as originally signed.  To determine whether arbitration would be prohibitively expensive for Perez, the court would review the cost of arbitration as provided for in the Agreement, i.e., AAA arbitration.  The court could not consider Globe's unilateral offer not accepted by Perez.

7

"By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Perez claims the arbitration agreement requires her to waive substantive rights under Title VII by compelling her to arbitrate such claims, but preventing her from receiving fees and costs if she prevails.

A court must interpret an arbitration agreement "according to ordinary state-law rules of contract construction." Paladino, 134 F.3d at 1061 (citations omitted). The intent of the parties governs the interpretation, and the court must look to the words of the agreement where their meaning is unambiguous, to determine the intent. See id.

The arbitration agreement requires Perez to arbitrate all disputes "directly or indirectly related to your recruitment, hire, employment or termination of employment by the Company; including, but not limited to, claims involving laws against discrimination whether brought under federal and/or state law, and/or claims involving co-employees, but excluding Worker's Compensation claims." This provision unambiguously requires Perez to submit Title VII claims to arbitration. See Paladino, 134 F.3d at

8

1061 (arbitration clause covering "any controversy or claim arising out of or relating to employment" required arbitration of Title VII claims).

Title VII provides that a prevailing party may be awarded reasonable attorneys' fees, including expert fees, and costs. <u>See</u> 42 U.S.C.S. § 2000e-5(k). The arbitration agreement states, "despite any rule providing that any one party must bear the cost of filing and/or the arbitrator's fees, all costs of the American Arbitration Association and all fees imposed by any arbitrator hearing the dispute, will be shared equally between you and the Company." This provision circumscribes the arbitrator's authority to grant effective relief by mandating equal sharing of fees and costs of arbitration despite the award of fees permitted a prevailing party by Title VII. "The words are plain, and the intent behind them apparent. There is no need, therefore, to resort to any other contract construction rules." <u>Paladino</u>, 134 F.3d at 1062.

Globe argues such an interpretation would render the Agreement unnecessarily self-contradictory. Globe maintains the Agreement incorporates the AAA rules governing arbitration of employment disputes; Rule 34(e) permits an arbitrator "to assess fees, expenses, and compensation . . . in favor of any party." Initial Br. at 14 (citing AAA Employment Dispute Rules, R. 15, Ex. 4, ¶ 34(e)). But the AAA rules cited by Globe are

9

not incorporated in the Agreement.  The arbitration agreement states any disputes between Globe and the signatory employee shall be "arbitrated . . . in accordance with the rules of the American Arbitration Association governing <u>labor</u> arbitration." (emphasis added).  The AAA rules governing labor arbitration are separate and distinct from the rules governing employment disputes.

The AAA labor arbitration rules incorporated in the Agreement provide "[t]he parties by written agreement, may vary the procedures set forth in these rules."[3]  AAA Labor Dispute Rules, R. 15 Ex. 3, ¶ 44 & ¶ 1. The Globe arbitration agreement plainly requires that costs and fees be shared equally by the parties, and supplants the arbitrator's authority to award fees and costs.  The provision constitutes a written agreement to vary the procedures adopted by incorporating the AAA rules, and supercedes the contradictory rule.   The Agreement is not self-contradictory.

*D.  Enforceability of the Agreement*

Faced with arbitration agreements proscribing statutorily available remedies, courts have either severed the illegal provision and ordered

---

[3]  In contrast, the AAA rules governing employment disputes provide that if "an adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."

10

arbitration, or held the entire agreement unenforceable. <u>Compare</u> <u>Herrington v. Union Planters Bank, N.A.</u>, 113 F.Supp. 2d 1026, (S.D. Miss. 2000)(severing an unlawful provision prohibiting award of punitive damages), <u>with</u> <u>Graham Oil Co. v. ARCO Products Co.</u>, 43 F.3d 1244, 1249 (9th Cir. 1995)(voiding the entire arbitration clause). Courts finding severance appropriate rely on a severance provision in the arbitration agreement, or the general federal policy in favor of enforcing arbitration agreements. <u>See</u>, <u>e.g.</u>, <u>Etokie v. Autosuperstores</u>, No. 99-802, (D.Md. Sep. 20, 2000)(relying on a severance provision); <u>see also</u> <u>Herrington</u>, 113 F.Supp. 2d at 1032-33(relying on policy favoring arbitration agreements).

The Globe arbitration agreement does not contain a severability provision, and this court has previously rejected the contention that the policy favoring arbitration agreements requires that courts sever unlawful provisions, rather than void the agreement. <u>See</u> <u>Paladino</u>, 134 F.3d at 1058. In <u>Paladino</u>, the arbitration agreement expressly required arbitration of the plaintiff's Title VII claims, but limited the remedies available through arbitration. <u>See</u> <u>id.</u> at 1061-62. This court recognized that federal statutory claims are arbitrable only when arbitration can serve the same remedial and deterrent functions as litigation, and an agreement that limits the remedies

11

available cannot adequately serve those functions. See id. (citing Gilmer, 500 U.S. at 28). If the arbitration agreement limits remedies Congress determined were appropriate, it should not be enforced. See id. (citations omitted).

The Paladino court also concluded the agreement at issue was unenforceable in part because it did not require the employer to advance the costs of arbitration. See Paladino, 134 F.3d at 1062. The Supreme Court recently held the opposite; the absence of a provision specifying which party must advance the arbitration fees and costs does not render the agreement unenforceable. See Green Tree, 121 S.Ct. at 521-22. The Court's decision in Green Tree does not cast doubt on the continuing vitality of the primary holding in Paladino. An arbitration agreement containing provisions that defeat a federal statute's remedial purpose is still not enforceable.

Congress determined that to remedy and effectively deter discrimination, a party prevailing on a Title VII claim would be permitted to receive fees and costs. See 42 U.S.C.S. § 2000e-5(k). By denying access to a remedy Congress made available to ensure violations of the statute are effectively remedied and deterred, the Agreement eroded the ability of arbitration to serve those purposes as effectively as litigation. See Robert A.

12

Gorman, The Gilmer Decision and the Private Arbitration of Public-Law Disputes, 1995 U.Ill. L.Rev. 635, 665 (1995)(Curtailing the availability of a statutorily available remedy reduces the potential award, "undercut[s] the strong compensatory policy of the statute . . .[and] threaten[s] the initiation of many meritorious arbitration proceedings."). Globe's attempt to defeat the remedial purpose of Title VII taints the entire agreement, making it unenforceable. See Paladino, 134 F.3d at 1062; Graham Oil, 43 F.3d at 1249.

Nevertheless, Globe requests that this court reform the agreement by severing the costs and fees provision and enforcing the remainder. To sever the costs and fees provision and force the employee to arbitrate a Title VII claim despite the employer's attempt to limit the remedies available would reward the employer for its actions and fail to deter similar conduct by others. C.f. Hooters of America Inc., v. Phillips, 39 F.Supp. 2d 482, 627 (D.S.C. 1998).

If an employer could rely on the courts to sever an unlawful provision and compel the employee to arbitrate, the employer would have an incentive to include unlawful provisions in its arbitration agreements. Such provisions could deter an unknowledgeable employee from initiating arbitration, even if

13

they would ultimately not be enforced. It would also add an expensive procedural step to prosecuting a claim; the employee would have to request a court to declare a provision unlawful and sever it before initiating arbitration. Including an unlawful provision would cost the employer little, particularly where, as here, the arbitration agreement provides the employee must bear the employer's court costs and attorneys' fees incurred defending the agreement if arbitration is challenged and the employer prevails.[4] If the court were inclined to reform this agreement, it would be more appropriate to limit the causes of action covered and exclude claims under Title VII and other statutes that permit an award of fees and costs to the prevailing party.

## CONCLUSION

The decision of the district court denying Globe's motion to compel arbitration is **AFFIRMED**.

---

[4] The legality of this provision is not at issue here, but the court observes that the provision unreasonably purports to apply even if certain terms of the agreement are declared unenforceable, so long as a court eventually orders the parties to arbitrate.