**Jerry UNDERWOOD**

v.

**CHEF FRANSICO/HEINZ**

**No. CIV.A.01–4113.**

United States District Court,
E.D. Pennsylvania.

April 4, 2002.

Michael T. Whitlow, Michael T. Whitlow and Assoc., Coatesville, PA, for plaintiff.

Sara A. Begley, Reed Smith Shaw & McClay, Philadelphia, PA, David J. McAllister, Cathy Bissoon, Reed Smith LLP, Pittsburgh, PA, for defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiff Jerry Underwood ("Underwood") has brought this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* and 42 U.S.C. § 1981 against his former employer, Chef Fransico/Heinz ("Heinz"). Before the court is the motion of defendant Heinz to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Defendant maintains that the Last Chance Agreement signed by Underwood precludes him from being able to bring his Title VII and § 1981 claims in court.

For purposes of defendant's motion to dismiss, we accept as true the well-pleaded factual allegations in the complaint and draw in plaintiff's favor any reasonable inferences therefrom. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1391 (3d Cir.1994). Of course, we need not accept bald assertions or legal conclusions. *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). In addition to reviewing the complaint's allegations, we may also take into consideration the undisputed Last Chance Agreement ("LCA") at issue in this action as well as a Labor Agreement referred to in the LCA. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

### I.

In January, 1995, Heinz hired Underwood as a forklift operator at its King of Prussia, Pennsylvania plant. On January 20, 1999, it discharged him. A little less than one month later, on February 10, 1999, Underwood filed a complaint with

both the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission ("EEOC") alleging that he had been terminated because he is African–American.

On June 24, 1999, Underwood, Heinz and the Union to which Underwood belonged entered into the LCA. It was signed by plaintiff Underwood, Plant Manager Gregg Berens, Union President Michael Israel, Union Vice President Robert Kowalski and Human Resources Manager William Oxenford. The LCA permitted Underwood to return to work provided that he first satisfy certain conditions, which included the successful completion of a physical examination and drug screen. It further required Underwood immediately to participate in an Employee Assistance Program sponsored by Livengrin Foundation, Inc. According to the LCA, if Underwood violated "any of the Rules of Personal Conduct, for which he was disciplined prior to his resignation, in the next two years then for the purpose of this Last Chance Agreement, he will have violated the terms of this Agreement and his employment will be *terminated*." It also restricted Underwood's ability to challenge any reinstatement of his January 20, 1999 discharge: "Mr. Underwood agrees that in the event the discharge is reinstated, the issue shall be processed through the grievance procedure of the Labor Agreement, but shall be limited to the question of whether such reinstatement was arbitrary or capricious." Finally, Underwood stipulated in the LCA that "the grievance procedure shall be the sole remedy and that the Company and the Union shall not be subject to any lawsuit as a result of discipline administered in accordance with this Agreement."

The Labor Agreement referred to in the LCA was between Heinz and the Worker's Independent Union ("Union"). It contained a grievance and arbitration procedure for "[a]ny dispute, or controversy, ... between the Company and any employee covered by this Agreement." Should the grievance not be resolved during steps one through four, the Labor Agreement provided for the grievance to proceed to arbitration before one arbitrator supplied through the Federal Mediation and Conciliation Service. Under the Labor Agreement, "[t]he arbitrator does not have the right to alter, amend or enlarge the terms of the Agreement." [1]

Underwood alleges in his complaint that he contacted Heinz soon after signing the LCA to schedule a time to participate in the Employee Assistance Program. However, according to Underwood, Heinz informed him that he should return to work and need not participate in that program. After resuming his job, Heinz purportedly urged him several times to withdraw the PHRC and EEOC discrimination complaint which he filed on February 10, 1999. On June 22, 2001, two days before the two-year probationary period of the LCA was to expire, Heinz terminated him ostensibly for failing to participate in the Employee Assistance Program. On July 5, 2001, Underwood dual filed with the PHRC and the EEOC a claim of "retaliation discrimination," contending that Heinz discharged him in retaliation for filing his earlier PHRC and EEOC complaint. The present action in this court under Title VII and § 1981 followed on August 13, 2001.[2]

---

1. The LCA also sought to resolve any claims Underwood might have against Heinz prior to its signing. While his complaint is not a model of clarity, Underwood's counsel conceded at oral argument on the defendant's motion to dismiss that plaintiff is not making a claim for wrongs occurring prior to the signing of the LCA on June 24, 1999.

2. While Heinz initially moved to dismiss Underwood's complaint in part because of a

## II.

In its motion to dismiss, Heinz contends that the LCA compels Underwood to arbitrate his Title VII and § 1981 disputes. Heinz relies on the clauses of the LCA stating that "in the event the discharge is reinstated, the issue shall be processed through the grievance procedure of the Labor Agreement," that the grievance procedure shall be Underwood's "sole remedy," and that Heinz and the Union "shall not be subject to any lawsuit as a result of discipline administered in accordance with this Agreement."

We must first determine whether the requirement that Underwood process the issue of the reinstatement of his discharge through the grievance procedure of the Labor Agreement includes his Title VII and § 1981 claims. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). Whether a dispute is subject to a grievance and arbitration procedure is, of course, a matter of contract between the parties. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 888 (3d Cir.1992).

■ There is no longer any doubt that an employee may enter into an individual contract with his or her employer to arbitrate any and all future disputes including federal statutory claims so long as Congress has not precluded such arbitration. *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 (1998); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Neither party contends that Congress has prohibited the use of a non-judicial forum for resolution of the claims at issue here.

failure to exhaust his administrative remedies, it has since withdrawn this argument. There-

In 1991, Congress added the following precatory language to both Title VII and § 1981: "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071. The text of this section "evinces a clear Congressional intent to encourage arbitration of" federal discrimination claims, including those under Title VII and § 1981. *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir. 1998).

■ While the LCA does not specifically refer to statutory claims, it cannot be disputed that Underwood's claims arise out of the reinstatement of his discharge. The LCA first provides that "the issue" of the reinstatement of Underwood's discharge shall be "processed through the grievance procedure of the Labor Agreement." It does not in any way limit the use of that procedure solely to contractual causes of action. In addition, the LCA states not only that "the grievance procedure shall be the sole remedy" but also that "the Company and the Union shall not be subject to *any* lawsuit as a result of discipline administered in accordance with this Agreement" (emphasis added). These provisions, read together, mean that whatever relating to his discharge could be the subject of a lawsuit must be grieved and ultimately arbitrated in accordance with the procedure set out in the Labor Agreement.

fore, we will not address this issue.

■ In *Gilmer,* a stockbroker registered as a securities representative with several stock exchanges, including the New York Stock Exchange. He agreed in his registration application to arbitrate "any dispute, claim or controversy" between him and his employer that was required to be arbitrated by an organization with which he was registered. 500 U.S. at 23, 111 S.Ct. 1647. The Supreme Court held that the wording was sufficient to encompass both plaintiff's contractual and statutory age discrimination claims. There did not need to be any explicit reference to statutory claims or to any particular federal statute. It is now established that individual agreements to arbitrate such disputes do not have to be as specific as do arbitration clauses in collective bargaining agreements. *Wright,* 525 U.S. at 79–81, 119 S.Ct. 391. For the latter to be read as compelling the arbitration of an employee's federal statutory claims, waiver of a judicial forum must be "clear and unmistakable" because "the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a [collective bargaining agreement]." *Id.* at 80, 119 S.Ct. 391 (citations omitted). In contrast, the Supreme Court has explained that "an individual's waiver of his [or her] own rights, rather than a union's waiver of the rights of represented employees" stands on a different footing because it does not implicate the "tension between collective representation and individual statutory rights." *Id.* at 80–81, 119 S.Ct. 391; *Gilmer,* 500 U.S. at 35, 111 S.Ct. 1647.

Although the parties to the LCA have chosen the "grievance procedure of the Labor Agreement" as the mechanism for resolving any discharge dispute, the fact remains that the LCA is an individual contract signed by Underwood and representatives of Heinz and the Union. Clearly, it is not a collective bargaining agreement applying to all Union members.

In sum, consistent with our reading of the Supreme Court decisions in *Gilmer* and *Wright,* the language of the LCA is sufficiently specific to obligate Underwood to grieve and arbitrate his federal statutory claims of retaliation under Title VII and § 1981.

### III.

■ Underwood's agreement to arbitrate his statutory claims does not end our analysis. We must next review the LCA to determine if he "effectively may vindicate [his] statutory cause of action in the arbitral forum." *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (citation omitted). The LCA provides that any issue related to the reinstatement of his discharge is to be "processed through the grievance procedure of the Labor Agreement, but *shall be limited to the question of whether such reinstatement was arbitrary or capricious*" (emphasis added).

The Third Circuit has yet to address whether such a contractual limitation would be permissible under federal antidiscrimination laws such as Title VII and § 1981. In *Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054 (11th Cir.1998), the Eleventh Circuit grappled with a question similar to the one before us. In that case, the individual arbitration agreement stated that plaintiff shall arbitrate "any controversy or claim arising out of or relating to [her] employment." *Id.* at 1061. The court found the clause to be broad enough to compel plaintiff to arbitrate both her contractual and statutory claims. *Id.* at 1060–62. However, the arbitration agreement limited plaintiff to "damages for breach of contract only" and prevented her from receiving any compensation for her Title VII claim. *Id.* at 1061. The Eleventh Circuit concluded that the

Supreme Court's opinion in *Gilmer* was predicated on "the assumption that [an] arbitration clause permits relief equivalent to court remedies." *Id.* at 1062 (citation omitted). Otherwise, "[w]hen an arbitration clause has provisions that defeat the remedial purpose of the statute, . . . the arbitration clause is not enforceable." *Id.* (citation omitted).

The *Paladino* court refused to enforce the arbitration clause and affirmed the district court's denial of defendant's motion to compel arbitration. The court reasoned that by insulating defendant from damages under Title VII, the arbitration provision "defeat[ed] the statute's remedial purposes." *Id.* (citation omitted).

█ The LCA does not limit the damages available to Underwood. Nonetheless, it obligates him to prove during the grievance and arbitration procedure an additional element which would not otherwise be required in a judicial forum. In order to establish a claim of retaliation under Title VII and § 1981 for filing an EEOC and PHRC complaint, a plaintiff must show that "(1) he or she engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." *Weston v. Pennsylvania*, 251 F.3d 420, 430 (3d Cir.2001) (citations omitted). Thus, in a lawsuit, Underwood would simply have to prove a causal connection between the filing of his earlier EEOC and PHRC complaint and the reinstatement of his discharge. However, the LCA demands much more. Underwood will be compelled to prove that the adverse action by his employer, that is the reinstatement of his discharge, was not only causally related to his firing, but was an "arbitrary or capricious" [3] decision on the part of his employer.

We acknowledge that the Supreme Court in *Gilmer* held that arbitration of statutory claims was permissible even without certain procedures and the "broad equitable relief" available in the federal courts. 500 U.S. at 32, 111 S.Ct. 1647. However, the examples cited by the Court were far less onerous or significant than the additional element of proof at issue here. In *Gilmer*, the Court decided that the more limited discovery provided in arbitration did not prevent the plaintiff from effectively vindicating his rights under the Age Discrimination in Employment Act. 500 U.S. at 31, 111 S.Ct. 1647. The *Gilmer* Court further ruled that the inability of plaintiff to obtain broad equitable relief through the use of a class action did not make the arbitral forum insufficient to press his claims of age discrimination. *Id.* at 32, 111 S.Ct. 1647. None of these or other limitations discussed therein has the detrimental effect that the arbitrary or capricious component will place on Underwood. What the LCA dictates goes to the very heart of his cause of action and his ability to prove his claim.

The Supreme Court has held that, "there can be no prospective waiver of an employee's rights under Title VII." *Wright*, 525 U.S. at 76, 119 S.Ct. 391 (citation omitted). However, the effect of the LCA is just that. By compelling Under-

---

**3.** "Arbitrary" is defined, among other ways, as "depending on choice and discretion" and "based on random or convenient selection or choice rather than on reason or nature." Webster's Third New International Dictionary 110 (1986). "Capricious" means "given to changes of interest or attitude according to whims or passing fancies: not guided by steady judgment, intent, or purpose." *Id.* at 333. Capricious also connotes "changeable, erratic, whimsical." *Id.* We doubt that any plaintiff's attorney would agree to a jury charge which included an "arbitrary or capricious" element.

wood to prove that Heinz's reinstatement of his discharge was arbitrary or capricious, the agreement narrows his right to relief to such an extent as to be tantamount to a prospective waiver of his statutory claims.

At oral argument, Heinz suggested that the court should sever the offending clause rather than hold the entire LCA between Underwood and Heinz unenforceable.[4] The LCA itself, we note, does not have a severability clause. *See Gourley v. Yellow Transp., LLC,* 178 F.Supp.2d 1196, 1205 (D.Colo.2001).

While we recognize that several courts have remedied the inequitable cost-sharing provisions of arbitration agreements by voiding those provisions and enforcing the remainder of the agreement, those cases clearly stand on a different footing.[5] *See Giordano v. Pep Boys—Manny, Moe & Jack, Inc.,* No. CIV. A. 99–1281, 2001 WL 484360, *6 (E.D.Pa. Mar.29, 2001) (Pollak, J.). Provisions related to the obligations of the parties to pay for an arbitration can easily be separated from the remainder of an agreement to arbitrate. Moreover, such obligations are collateral to the claim for relief. In *Zumpano v. Omnipoint Communications,* No. CIV. A. 00–CV–595, 2001 WL 43781, at *7 (E.D.Pa. Jan.18, 2001) (Yohn, J.), the court recognized the fundamental distinction between cost provisions and limitations on statutory rights when it distinguished the Eleventh Circuit's holding in *Paladino* from the sharing of arbitral costs. The LCA at issue here

attempts to restrict in a material way the very nature of Underwood's federal statutory claim for retaliation.

When faced with situations similar to the one before us, other courts have declined to enforce the entire agreement rather than severing or reforming the offending clause. *Paladino,* 134 F.3d at 1058, 1062; *Gourley,* 178 F.Supp.2d at 1205; *see also Perez v. Globe Airport Sec. Servs., Inc.,* 253 F.3d 1280, 1287 (11th Cir. 2001). The Eleventh Circuit in *Paladino* stated that "the presence of an unlawful provision in an arbitration agreement may serve to taint the entire arbitration agreement, rendering the agreement completely unenforceable, not just subject to judicial reformation." 134 F.3d at 1058 (citations omitted). The arbitrary or capricious clause likewise taints in a fundamental way the arbitration provisions of the LCA by emasculating Underwood's prospective statutory discrimination claims.

As with the limitation of plaintiff to contract damages in *Paladino,* resolving Underwood's Title VII and § 1981 claims in the manner required under the LCA would deny him "relief equivalent to court remedies." 134 F.3d at 1062 (citation omitted). The arbitrary or capricious requirement, above and beyond the necessary showing under both statutes, is fundamentally incompatible with the "remedial and deterrent function[s]" of Title VII and § 1981 and would prohibit Underwood from effectively "vindicat[ing][his] statutory cause[s]

---

**4.** Neither party addressed the issue of severability in their initial briefing. At oral argument, Heinz did not cite to any cases in support of its argument that the court should sever the clause which requires Underwood to prove that the reinstatement of his discharge was not arbitrary or capricious.

**5.** The Labor Agreement here provides for the costs of arbitration to be borne equally by the

parties. Several courts have addressed whether requiring plaintiffs to pay a portion of arbitration costs creates impermissible barriers which inhibit plaintiffs from vindicating their federal discrimination claims in an arbitral forum. Plaintiff has not raised this issue here, and we will therefore not address it. In any event, it is unclear whether Underwood or his Union would pay such costs.

of action." *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647 (citation omitted).

Accordingly, we will deny enforcement of the grievance and arbitration provision of the LCA as to Underwood's Title VII and § 1981 claims and allow these claims to proceed in this court. The motion of defendant to dismiss plaintiff's complaint will be denied.

## ORDER

AND NOW, this 4th day of April, 2002, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant Chef Fransico/Heinz to dismiss plaintiff's complaint is DENIED.